50 CCPA
Application of Bhogaraju V. JANA-KIRAMA-RAO.

Patent Appeal No. 6997.

United States Court of Customs and Patent Appeals.

June 10, 1963.

Donald S. Cohen, Philadelphia, Pa., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 2, 3, 6, 7, 10 and 11 of application Ser. No. 534,529, filed September 15, 1955, for "Cadmium-Bismuth Glasses."

Appellant's specification shows that his glasses are composed of *three* primary constituents: a cadmium compound (e. g., cadmium oxide, CdO); a bismuth compound (e. g., bismuth oxide, $Bi_2O_3$); and a network former (e. g., silica, $SiO_2$). A modifier (e. g., tungsten oxide, $WO_3$) may also be used if desired.

The significance of the cadmium compound, appellant's application says, is to provide "cadmium ions" which were known at the time of his invention to aid in the formation of a moisture-resistant, neutron-absorbing glass having a high refractive index and good light transmission qualities.

The bismuth compound is primarily significant in appellant's glass to provide "bismuth ions," which appellant says were known at the time of his invention to aid in the formation of a glass having a high dielectric constant, a low dissipation factor, good stability, and easy workability. The bismuth compound is important for the further reason, appellant's application states, that "bismuth has the largest scattering cross-section for neutrons of any element and has a high gamma ray absorption coefficient."

Appellant's specification also states that at the time of his invention the art recognized certain glass-forming compounds as "network formers" the melting of which in a glass batch

" * * * results in the formation of a skeleton or basic structure, which is a distorted or irregular network of cations such as silicon or boron ions bonded to one another by oxygen ions. Each silicon or boron ion is surrounded by four oxygen ions and since these ions form the basic

network of the glass they are termed 'network formers'."

As to appellant's last constituent, the optional modifier, appellant's specification states:

"Modifying glasses * * * is well-known to those skilled in this art. Thus tantalum ions are added to glasses to raise their softening point, while the addition of thorium, lanthanum or tungsten ions increase[s] the dielectric constant. The addition of calcium oxides improves the workability of a glass and decreases its tendency to devitrify."

The percent by weight of one such modifier which appellant specifically discloses adding to his glass (tungsten oxide, $WO_3$) is stated as ranging "from a trace to 20%." Otherwise the modified batches of the two examples given consist of $Bi_2O_3$, CdO, and $SiO_2$.

We find ourselves somewhat at a loss, in view of the foregoing statements in appellant's specification, to determine therefrom just what aspect of his glass batch compositions he considers to be patentably significant. The "objects" stated in appellant's specification are not informative in this regard as they recite that it is desired that appellant's glasses possess such properties as a high refractive index, high dielectric constant, and others which the art would apparently expect them to possess from the use therein of cadmium and bismuth compounds, according to the recital in the specification of what the art already knew.

The claims on appeal are the only indication we can find in the application of what the appellant regards as his invention. Claim 1 is the broadest and claim 11 the most specific claim. They read:

"1. An optical glass resulting from fusion of a batch of glass forming compounds, said batch consisting essentially of a compound to provide cadmium ions, a compound to provide bismuth ions, and a compound to provide network former ions.

"11. An optical glass resulting from fusion of a batch of glass forming compounds having the following range of compositions by weight percent consisting essentially of:

| "Cadmium oxide | (CdO) | trace to 75% |
|---|---|---|
| "Bismuth oxide | ($Bi_2O_3$) | 20 to 95% |
| "Silica | ($SiO_2$) | 0.5 to 20% |

---

The issue as to the patentability of all the appealed claims has narrowed, on appeal to this court, to a single question: What is the significance of the words "consisting essentially of" which appear in the claims? Both appellant and the Patent Office appear to agree that the meaning in the patent law of these words was appropriately defined in the case of Ex parte Davis et al., 80 U.S.P.Q. 448 (Bd.), wherein reference was made to a "code" of terms drawn up by a group of examiners, one item of which reads:

"(3) recital of 'essentially' along with 'consisting of' [is regarded] as rendering the claim open only for the inclusion of unspecified ingredients *which do not materially affect* the basic and novel characteristics of the composition." [Emphasis ours.]

Speaking of the facts before it in the Davis et al. case, the board commented:

"In the present case where the claims recite three ingredients and the reference discloses four, the important question is whether the term 'consisting essentially of' excludes that fourth ingredient. We think that it does, since the 'modifier' *materially changes* the fundamental character of the three-ingredient composition * * *." [Emphasis ours.]

The sole reference relied on here by the Patent Office is

Armistead 2,517,459 Aug. 1, 1950

The instant case presents facts very similar to those in the Davis et al. case. A specific optical glass disclosed by Armistead includes silicon, cadmium, and bismuth oxides. But it *also* includes boric oxide ($B_2O_3$), berrylium oxide (BeO), and a mixture of calcium oxide (CaO) and strontium oxide (SrO). The examiner's rejection of the claims on appeal as restated by the board and its reasons for affirming it are as follows:

Claims 1, 2, 3, 6, 7, 10 and 11 stand rejected as unpatentable over Armistead.

"We find no error in this rejection. The reference shows an optical glass in which silica and bismuth and cadmium oxides are present within the claimed proportions. The appellant states that other ingredients are present in the Armistead composition so that the glass of Armistead is an entirely different glass than appellant's. *In what respects its characteristics are different the appellant has not set forth.* The appellant has cited Ex parte Davis et al., 80 U.S.P.Q. 448 but we do not see that the other ingredients of the Armistead glass *materially* effect the *basic* characteristics of appellant's glass. Since there is no showing of properties of the claimed optical glasses as patentably different from those of Armistead, this rejection of claims 1, 2, 3, 6, 7, 10 and 11 will be sustained." [Emphasis ours.]

Upon careful consideration of the whole record and the arguments of the parties, it does not appear to us that there are any *basic* or *novel* characteristics in appellant's claimed glass compositions by which they can be distinguished from Armistead's or which will serve, under the principle enunciated in Davis et al., to show that ingredients included by Armistead in his glass compositions in addition to those enumerated in appellant's claims, should be *excluded* by the phrase "consisting essentially of" common to appellant's claims.

Certainly no characteristics whatever are set forth in the claims, unless it be in the word "optical," which modifies "glass." Questioned as to the meaning or significance of this limitation at the argument, appellant's counsel said this was to signify that the composition is "vitrified." It being the essential nature of glass, by definition, to be vitrified,[1] we interpret this in the light of the statement in the specification that some "network formers" that were tried "did not form completely vitreous glasses, but did form partially devitrified glasses, i. e. glasses having crystals mixed therein." We suppose "optical" excludes glasses containing crystals, nothing more. We cannot regard this sole limitation, therefore, as significant in stating any basic or novel characteristic of appellant's glasses.

Armistead discloses "optical glasses" and he teaches that they may contain up to 60% cadmium oxide (CdO), to obtain beneficial effect upon the refractive index, and up to 20% bismuth oxide ($Bi_2O_3$) for the same purpose. These glasses contain silica, a source of "network former ions."

Appellant gives 21 examples of glasses containing ingredients named and within the ranges stated in his claim 11, demonstrating that their refractive indices, dielectric constants, and dissipation factors all vary over wide ranges. He does not prefer one over the other and he claims them all. In review he makes the following statement:

"Although a large number of glasses may be made from compounds containing cadmium ions, bismuth ions, and a network former

---

1. Hackh's Chemical Dictionary, 3rd ed., defines "vitrification" as "The conversion of a material into a glass or glass-like substance, having increased hardness and brittleness;" "vitrify" is defined as "To sinter or melt to a glassy mass." "Glass" is defined as an amorphous material. "Amorphous" is defined to mean without form or non-crystalline.

in varying quantities, and the properties of such glasses will vary over a wide range, it is unlikely that among the many glasses which can be formed there will be a single glass which has all the properties desired for a particular application. Accordingly, a particular composition which has most of the properties desired is selected and it is then modified by adding modifiers to change its properties to conform as closely as possible to what is desired. Modifying glasses in this manner is well-known to those skilled in this art. Thus tantalum ions are added to glasses to raise their softening point, while the addition of thorium, lanthanum or tungsten ions increase[s] the dielectric constant. The addition of calcium oxides improves the workability of a glass and decreases its tendency to devitrify."

He then gives two examples of the use of up to 20% of tungsten oxide as a modifier and states:

"Thus I have provided a group of glasses having new compositions made from compounds containing both cadmium ions and bismuth ions, the remainder of the glass composition being a compound to supply network former ions and some modifier ions if necessary. I have shown that these glasses have high dielectric constants, and desirable optical properties as well as chemical durability. In addition, because they contain both cadmium and bismuth ions they are useful as neutron shields. In particular, the cadmium-bismuth boron glasses herein disclosed are useful for high energy neutron shielding. I have also indicated how these glasses may be modified to improve particular characteristics by the addition of modifying compounds to the batch from which the glass is fused."

With this disclosure underlying his claims, it is our opinion that appellant is in no position to urge that they are so restricted by the phrase "consisting essentially of" that they define subject matter patentable over Armistead merely because the glasses of the reference contain some modifying ingredients in addition to silica, cadmium oxide and bismuth oxide. So may appellant's glasses. The word "essentially" opens the claims to the inclusion of ingredients which would *not* materially affect the *basic* and *novel* characteristics of appellant's compositions as defined in the balance of the claim, according to the applicable law. But no basic or novel characteristic to be so affected can be deduced from the disclosure and none was shown in brief or argument. We therefore find that the board was correct in holding that there is no showing of properties patentably distinguishing appellant's claimed glasses from those of the reference.

The decision of the board is affirmed.

Affirmed.