**Application of Jack L. HERZ**

**and**

**Rodney Howard Willis.**

**Patent Appeal No. 76–574.**

United States Court of Customs and Patent Appeals.

July 22, 1976.

Charles B. Rodman, Dobbs Ferry, N. Y., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals affirming the rejection of claims 2–7 and 9 in application serial No. 180,925, filed September 15, 1971, for "Oxidation Inhibited Phosphate Based Hydraulic Fluids." We affirm.

*The Invention*

The invention consists of functional fluids essentially of a phosphate base stock and an

antioxidant of (1) a hydrogen phosphate ester, or amine salt thereof, and (2) an alkylene-linked hindered bisphenol. Appellants' specification states that their fluids can additionally contain any of the well-known additives, including, *inter alia*, ashless dispersants of the alkoxylated alkyl phenol type and viscosity index improvers such as polymers and copolymers of alkyl esters of acrylic and methacrylic acid having a molecular weight of from about 5,000 to about 50,000. The specification further states that the fluids possess "superior oxidative stability" compared to fluids that differ only in the absence of a hydrogen phosphate ester or amine salt thereof and that this is unexpected since hydrogen phosphates were not previously recognized as antioxidants. The fluids can be used in a wide variety of applications, such as in hydraulic lifts and levelling devices and as steam turbine lubricants. Claim 9, the only independent claim, is illustrative:

> 9. A functional fluid consisting essentially of:
>
> (a) a phosphate base stock having the formula:

$$R - (Y)_a - \overset{\overset{O}{\|}}{\underset{\underset{R_1}{(Y_2)_b}}{P}} - (Y_1)_c - R_2$$

wherein Y is selected from the group consisting of oxygen, sulfur and $-\overset{R_3}{\underset{}{N}}-$ ; $Y_1$ is selected from the group consisting of oxygen, sulfur and $-\overset{R_4}{\underset{}{N}}-$ ; $Y_2$ is selected from the group consisting of oxygen, sulfur and $-\overset{R_5}{\underset{}{N}}-$ ; R, $R_1$, $R_2$, $R_3$, $R_4$ and $R_5$ are each selected from the group consisting of alkyl, aryl, substituted aryl and substituted alkyl; and a, b and c are numbers having a value of 0 to 1 such that the sum a + b + c is from 1 to 3; and

(b) an antioxidant combination of from about 0.005 to about 3.0% by weight of the entire fluid of a hydrogen phosphate ester or amine salt thereof having the formula:

$$R_8O - \overset{\overset{O}{\|}}{P} \diagdown \begin{matrix} OA \\ OA' \end{matrix}$$

wherein $R_8$ is a $C_1$-$C_{20}$ alkyl group; A is hydrogen, or an amine cation of the formula:

$$\left[ R' - \overset{\overset{R''}{|}}{\underset{\underset{H}{|}}{N}} - R''' \right]^+$$

wherein R', R'' and R''' are each hydrogen or a $C_1$-$C_{30}$ alkyl group; and A' is A or a $C_1$-$C_{20}$ alkyl group; and from about 0.1 to about 11% by weight of the entire fluid of an alkylene-linked hindered bisphenol having at least one alkyl group of from 3 to 8 carbon atoms attached to the phenol ring in a position adjacent to the hydroxyl groups.

### The Rejections

The board, one member dissenting, affirmed rejections under 35 U.S.C. § 103 and § 112, first paragraph. Since we affirm the section 103 rejection, we do not reach the rejection under section 112.

The patents relied upon by the board majority are:

| | | | |
|---|---|---|---|
| Orloff et al. | (Orloff) | 3,115,465 | Dec. 24, 1963 |
| Messina et al. | (Messina) | 3,556,999 | Jan. 19, 1971 |

Orloff discloses functional fluids that can have a wide variety of base stocks, including hydrocarbon oil and phosphate base stocks, and an antioxidant made up of a phosphite ester,[1] preferably a hydrogen phosphite ester, and a methylene-linked hindered bisphenol (which is an alkylene-linked hindered bisphenol). The antioxidant is stated to be highly effective in inhibiting oxidative deterioration of hydrocarbon fuels, oils, greases, and polymeric and other organic compositions. Functional fluids and automatic transmission fluids are disclosed that are based on hydrocarbon oil, to which may be added, in addition to the antioxidant, components that improve the

---

1. We note that only example 19 of Orloff (there are sixty-five examples) discloses an automatic transmission fluid containing "0.5 part of phosphorus as di-tert-butyl hydrogen phosphate." We are satisfied that the teaching of Orloff is of a phosphite rather than a phosphate as an additive component. The specification clearly describes the invention as an antioxidant with an "oil soluble phosphite."

properties of the fluids, including viscosity index improvers. Also disclosed are hydraulic fluids and lubricants based on organic phosphates, which may contain, besides the antioxidant, the additives frequently used to fortify lubricant compositions, such as detergent-dispersants and viscosity index improvers. Orloff further discloses that the structure of the phenolic compound is of great importance, because, if other phenolic compounds are substituted, the results are decidedly inferior.

Messina discloses hydraulic fluids, particularly automatic transmission fluids, based on hydrocarbon oil and containing an additive made up of (1) a phosphite (which may be a hydrogen phosphite ester) or a hydrogen phosphate ester; (2) a substituted phenol of a certain structure, an alkylene-linked hindered bisphenol, or an aromatic secondary amine; and (3) an oil-soluble dispersant copolymer (having a molecular weight of from 2,000 to 1,000,000 or more) of an N–vinylpyrrolidinone and at least one alkyl acrylate or methacrylate. Known additives may be employed to bring about special effects. The fluids are said to possess superior stability against oxidative deterioration and enhanced detergent-dispersant qualities. Messina states that each of the three additive components is "critically important" and—

[f]urthermore, if one employs the fluid base oil alone or with any of the three above components separately, oxidation resistance is inferior and unsatisfactory.

He adds:

Furthermore, any combination of two, but not all three of the three above-described components also gives inferior results.

The examiner held the invention unpatentable over Orloff in view of Messina and vice versa. The board affirmed, reasoning that Messina teaches that phosphite esters and di-substituted phosphate esters are equivalent when combined with a substituted phenol and other materials to form an antioxidant and that, therefore, it would have been obvious to substitute a phosphate ester for the phosphite ester in Orloff. Re-

garding the N–vinylpyrrolidinone of Messina, the board noted that Messina teaches "an embodiment employing only two components to obtain inferior (but apparently useful) oxidation resistance" and said that it had no reason to assume that vinylpyrrolidinone would not also improve appellants' composition. It found that it would have been obvious to omit the vinylpyrrolidinone when its function as a dispersant is unnecessary. It observed that the claims do not exclude additives, such as vinylpyrrolidinone; that the phrase "consisting essentially of" excludes materials that would have a deleterious effect, but that there is no reason to believe that the vinylpyrrolidinone would do so; and that appellants' specification discloses that many types of additives may be included with the antioxidants. The board concluded, therefore, that the examiner was correct in finding obvious the use of Messina's additive in a phosphate base stock in view of Orloff's teaching that a similar additive may be used in both hydrocarbon oil and phosphate base stocks.

## OPINION

 It is axiomatic that claims are given their broadest reasonable construction consistent with the specification. *In re Saether*, 492 F.2d 849 (CCPA 1974). This complements the statutory requirement for particularity and distinctness (35 U.S.C. § 112, second paragraph), so that an applicant who has not clearly limited his claims is in a weak position to assert a narrow construction. Therefore, in construing the phrase "consisting essentially of" in appellants' claims, it is necessary and proper to determine whether their specification reasonably supports a construction that would include additives such as the dispersant copolymer of Messina. *Norton Co. v. Carborundum Co.*, 530 F.2d 435 (CA 1 1976); *In re Janakirama-Rao*, 317 F.2d 951, 50 CCPA 1312 (1963).

 In *In re Janakirama-Rao, supra*, this court held that the phrase "consisting essentially of" limits the scope of a claim to the specified ingredients and those that do not *materially* affect the *basic* and *novel*

characteristic(s) of a composition. It cited *Ex parte Davis*, 80 USPQ 448 (Pat.Off.Bd. App.1948), which appears to have been the first published opinion construing the phrase "consisting essentially of,"[2] and quoted approvingly the following portion of the opinion:

> In the present case where the claims recite three ingredients and the reference discloses four, the important question is whether the term "consisting essentially of" excludes that fourth ingredient. We think that it does, since the "modifier" *materially changes* the *fundamental* character of the three-ingredient composition . . . . [Emphasis added.]

In *Davis*, the material change of fundamental character was from a normally nontacky heat-or solvent-activatable adhesive that formed a strong, heat-resistant bond to a normally tacky and pressure-sensitive adhesive that formed a weak, temporary bond.

■ Appellants' specification states that the composition can contain any of the well-known additives, including dispersants. There is no evidence that Messina's dispersant would materially affect the basic and novel characteristic of their composition, and all evidence is to the contrary. Messina's composition has the same basic and novel characteristic—increased oxidation resistance—although it has additional enhanced detergent-dispersant qualities. Our conclusion is that the only essential difference between the claimed composition and Messina's is that Messina's has a hydrocarbon oil base stock rather than the claimed phosphate base stock.

Orloff shows that an antioxidant similar to Messina's may be used in a variety of base stocks having the problem of oxidation, including both hydrocarbon and phosphate base stocks, and that detergent-dispersants may be added to the latter. Accordingly, we hold that such a teaching is sufficient to have made obvious to one of ordinary skill in the art the use of Messina's additives in a phosphate base stock to obtain increased oxidation resistance.[3]

In view of the foregoing, the decision of the board is *affirmed*.

*AFFIRMED.*

---

2. The phrase was briefly mentioned in *In re Gray*, 53 F.2d 520, 19 CCPA 745 (1931), and *Ex parte Muench*, 79 USPQ 92 (Pat.Off.Bd.App. 1948).

3. It is unnecessary to consider the board's position that Messina's teaching that omission of any of his three components yields inferior results suggests omitting the vinylpyrrolidinone; or that there is sufficient motivation provided by the art to suggest substituting a phosphate ester for the phosphite ester of Orloff.