**ATLAS POWDER COMPANY, Appellee,**

v.

**E.I. DU PONT DE NEMOURS & COMPANY and Alamo Explosives Company, Inc., Appellants.**

**Appeal No. 84–504.**

United States Court of Appeals, Federal Circuit.

Dec. 27, 1984.

Lawrence F. Scinto, Fitzpatrick, Cella, Harper & Scinto, New York City, argued for appellants. With him on the brief were Joseph M. Fitzpatrick, David F. Ryan, Nels T. Lippert and Laura A. Bauer, New York City, of counsel.

Robert C. Kline and James R. Morrison, Wilminton, Del., and Stanley E. Neely, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., were on the brief, for appellant.

Garland P. Andrews, Richards, Harris & Medlock, Dallas, Tex., argued for appellee. With him on the brief were Roy W. Hardin and David L. Hitchcock, Dallas, Tex.

Before MARKEY, Chief Judge, and BALDWIN and MILLER, Circuit Judges.

BALDWIN, Circuit Judge.

This is an appeal by E.I. du Pont De Nemours & Co. and its customer Alamo Explosives Co., Inc. (collectively, "Du Pont"). The appeal is from a final judgment of the United States District Court for the Northern District of Texas holding product claims 1–5, 7, 12–14, and 16–17 of U.S. Patent No. 3,447,978 ('978 patent), issued to Harold Bluhm on June 3, 1969 and assigned to the Atlas Powder Co. ("Atlas"), not invalid under 35 U.S.C. §§ 102, 103, and 112, not fraudulently procured, and infringed. We affirm.

### Background

The district court opinion, reported at 588 F.Supp. 1455, 221 USPQ 426 (1983), contains a detailed description of the facts, familiarity of which is presumed herein.

Briefly, the '978 patent relates to blasting agents, *i.e.*, chemical mixtures that are relatively insensitive to normal modes of detonation but can be made to detonate with a high strength explosive primer. By the mid-1960's, blasting agents consisted of two major types: "ANFO" and "water-containing".

An "ANFO" blasting agent comprised a mixture of particulate ammonium nitrate, usually in the form of small round aggregates known as "prills", and fuel oil (*e.g.*, diesel fuel). They were widely used in mining and construction because of their low cost, ease of handling, and ability to be mixed at the blast site rather than prepackaged at the plant. However, to work properly they could be used only in "dry" holes (without water) because water desensitized the mixture, rendering it nondetonable.

A "water-containing" blasting agent, which was water resistant, generally comprised a slurry of particulate ammonium nitrate (or other oxidizing salt), a solid or liquid fuel, at least 5 percent water, and, as a sensitizer to increase explosive power, either a high explosive such as TNT or a chemical such as nitric acid. Often, a gelling agent was added, particularly in the chemical sensitized slurries, to prevent the separation of sensitizers from slurry by

forming a gel (a colloid in which the disperse phase has combined with the continuous phase to produce a viscous, jelly-like product). The use of sensitizers in water-containing blasting agents made preparation and handling more difficult and dangerous and, hence, more costly.

Before the '978 invention, Atlas manufactured a gelled slurry blasting agent called Aquanite, based on U.S. Patent No. 3,164,503, issued to Gehrig and assigned to Atlas. Aquanite used as a sensitizer nitric acid, which was highly caustic to skin and clothing and tended to separate out of the product even in the presence of a gelling agent, thereby reducing the product's stability and shelf life. Also, Aquanite was "hypergolic", *i.e.*, it ignited wood, coal and various chemicals upon contact, which was suspected of causing the blasting agent to detonate prematurely.

*The Invention*

In 1965, Atlas assigned Harold Bluhm to investigate stabilizing its Aquanite gel. Bluhm experimented with various "emulsions" that did not contain nitric acid or a gelling agent. (An emulsion is a stable mixture of two immiscible liquids; a "water-in-oil" emulsion has a continuous oil and discontinuous aqueous phase; an "oil-in-water" emulsion is the reverse.) In early 1966, Bluhm formulated an intimately mixed water-in-oil, water resistant emulsion blasting agent. The product was sensitized with entrapped air rather than high explosives or chemicals and is the subject matter of the claims at issue. Representative is Claim 1:

1. An emulsion blasting agent consisting essentially of:

an aqueous solution of ammonium nitrate forming a discontinuous emulsion phase;

a carbonaceous fuel forming a continuous emulsion phase;

an occluded gas dispersed within said emulsion and comprising at least 4% by volume, thereof at 70°F. and atmospheric pressure; and

a water-in-oil type emulsifying agent;

said carbonaceous fuel having a consistency such that said occluded gas is held in said emulsion at a temperature of 70°F.

Claim 1 is the only independent claim in suit. The other, dependent claims describe various ingredients, such as microspheres for the occluded gas, additional fuels (*e.g.*, aluminum), specific ranges of ingredients, and various properties of the blasting agent.

*Du Pont's Activities*

Du Pont sold a gelled slurry blasting agent until the latter part of the 1970's. In 1976, Du Pont formed a team to study the feasibility of an emulsion blasting agent. The team succeeded in making a water-in-oil emulsion blasting agent which Du Pont began making and selling in August 1978. Atlas sued for infringement in December 1979.

*The District Court Proceedings*

A non-jury trial was held between January 28 and February 2, 1982. Du Pont asserted invalidity of the '978 patent under sections 102(a), 103, and 112, "fraud" on the Patent and Trademark Office (PTO), and noninfringement. The district court rejected those assertions for the product claims at issue, holding that: (1) the claimed invention was not anticipated by the prior art; (2) the claimed invention would not have been obvious in view of the prior art; (3) the claims were not invalid for the patent's failure to comply with the "best mode", enablement, and "overclaiming" requirements of 35 U.S.C. § 112; (4) the patent was not procured by "fraud" on the PTO; and (5) Du Pont's products infringed the claims under the doctrine of equivalence. On appeal, Du Pont contests those holdings, except for the one on best mode.

The district court denied Atlas increased damages and attorney fees because Du Pont had not willfully infringed the '978 patent claims and the case was not "exceptional". The district court also held that product claims 6, 13, and 15 were not infringed and that process claims 18–30 were invalid. Atlas has not appealed those holdings.

## Issues

(1) Whether the district court was clearly erroneous in finding the invention of the patent claims at issue not anticipated by the prior art.

(2) Whether the district court erred in holding that the invention of the patent claims at issue would not have been obvious.

(3) Whether the district court erred in holding the patent claims at issue not invalid because of nonenablement.

(4) Whether the district court erred in holding no "fraud" on the PTO, *i.e.*, no inequitable conduct.

(5) Whether the district court was clearly erroneous in finding that Du Pont's products infringed the '978 claims under the doctrine of equivalents.

## OPINION

### I. *Standard of Review*

The burden is on Du Pont, as appellant, to establish that the district court's ultimate fact findings (*e.g.*, anticipation, infringement) were clearly erroneous, that the district court's legal conclusions (*e.g.*, § 103 obviousness, § 112 enablement) were erroneous, or that the findings underlying the ultimate findings or conclusions were clearly erroneous. The "clearly erroneous" standard is satisfied if we are left with the firm conviction that error has been committed. *See, e.g., Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), *cert. denied,* — U.S. ——, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984).

### II. *Presumption of Validity*

Under 35 U.S.C. § 282, a patent is presumed valid, and the one attacking validity has the burden of proving invalidity by clear and convincing evidence. *See, e.g., American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). In that regard, the district court committed an error.

■ After correctly stating that the presumption of validity must be overcome with clear and convincing evidence, the dis-

trict court stated that, if pertinent prior art were not cited to the PTO, as was the case here, the presumption is weakened and Du Pont must prove invalidity by only a preponderance of the evidence. That is incorrect. Though the introduction of prior art not before the PTO may facilitate meeting the challenger's ability to meet the burden of proof on invalidity, the presumption remains intact, the burden of persuasion remains on the challenger, and the "clear and convincing" standard does not change. *See, e.g., Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1392 & n. 4, 222 USPQ 943, 945 & n. 4 (Fed.Cir.1984); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed. Cir.1983).

■ The error, however, was harmless. Indeed, it helped Du Pont at trial by lowering the standard of proof needed to prove its case. Even with the lower standard, Du Pont was unable to succeed.

### III. *Anticipation*

■ The district court's determination of no anticipation was a factual one that should be reversed only if appellant shows that it was clearly erroneous. *See, e.g., Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed.Cir. 1984). Du Pont attempts to satisfy its burden by arguing that U.S. Patent No. 3,161,551, to Egly, et al., anticipated the claimed invention. We conclude, however, that the district court's finding of no anticipation was not clearly erroneous.

■ Egly, which Du Pont referred to at oral argument as the "closest prior art", describes an emulsion of ammonium nitrate, water, fuel oil, and a water-in-oil emulsifying agent. Though Egly teaches the presence of solid ammonium nitrate prills as an essential ingredient, Du Pont argues that the '978 claims, because of the phrase "consisting essentially of", does not exclude the presence of those prills. *See, e.g., In re Herz*, 537 F.2d 549, 551, 190 USPQ 461, 463 (CCPA 1976); *In re Janaki-rama-Rao*, 317 F.2d 951, 954, 50 CCPA

1312, 137 USPQ 893, 896 (1963). Du Pont is correct. However, the district court found that Egly "does not mention air or gas as an ingredient in their explosives" and occluded air is an element of the claims. Hence, there is no anticipation under § 102, because the exclusion of a claimed element from a prior art reference is enough to negate anticipation by that reference. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771–72, 218 USPQ 781, 789 (Fed.Cir.1983).

Du Pont asserts that Bluhm conceded in answer to an interrogatory that the first reduction to practice of the claimed invention was on January 14, 1966, and that Mr. Bluhm's notebook shows the composition prepared on that date to be identical to Egly's, *i.e.*, an emulsion without occluded air. Because the first reduction to practice was identical to Egly's product, Du Pont argues, the claimed invention is anticipated by Egly. Atlas argues that the notebook entry reveals that occluded air was present in the composition prepared on January 14, 1966, and hence, the first reduction to practice was not identical to Egly's composition. Atlas appears to be correct but, in any event, the district court's anticipation analysis properly focused on the claimed invention, which includes occluded air, not on Atlas' characterization of the January 14, 1966 experiment as the first reduction to practice.

## IV. *Obviousness*

■ Though an invention is not anticipated by 35 U.S.C. § 102, a patent should not issue if the differences between the claimed invention and prior art are such that the invention as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. 35 U.S.C. § 103. In assessing nonobviousness a court should answer certain factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) so-called "secondary" considerations, *e.g.*, long felt need, unexpected results, commercial success. *See, e.g., Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d at 1538, 218 USPQ at 876; *Simmons Fastener Corp. v.*

*Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575, 222 USPQ 743, 746 (Fed.Cir.1984). The "secondary" considerations, when present, may assist the court in determining nonobviousness without falling prey to hindsight reasoning.

■ Here, the district court made findings on the content of the prior art, the level of ordinary skill in the art, the differences between the prior art and the claimed invention as a whole, and then concluded that the claimed invention was nonobvious. Du Pont has not shown error in the legal conclusion of nonobviousness, or clear error in the underlying findings.

### Content of the Prior Art and Differences Between It and the Claimed Invention

In addition to Egly, discussed above, the district court considered several patents and articles.

Atlas' Gehrig patent describes a blasting agent containing particulate ammonium nitrate, a solution of nitric acid in water, and fuel oil. Though the mixture may be an emulsion, the primary thrust of Gehrig is using a gel. Gehrig notes that, when an emulsion is used, the product quickly separates into its various components. Gehrig recommends that the emulsion be used within 24 hours to avoid separation. The gel form is considered desirable to stabilize the product for storage.

The claimed invention differs from Gehrig because Gehrig requires nitric acid as an essential ingredient. The '978 claims exclude the presence of nitric acid because the essence of the claimed composition is the elimination of nitric acid and the claim phrase "consisting essentially of" excludes ingredients that would "materially affect the basic and novel characteristics" of the claimed composition. *In re Herz*, 537 F.2d at 551, 190 USPQ at 463; *In re Janakirama-Rao*, 317 F.2d at 954, 137 USPQ at 895.

Gehrig does not teach or suggest substituting nitric acid with air to sensitize the product. Though it suggests the use of microballoons containing air as a stabilizer,

it also discusses heating the product to remove entrapped air.

U.S. Patent No. 3,052,578, to Davis, describes a blasting agent comprising a blend of fuel oil and ammonium nitrate poured over solid ammonium nitrate. An oil-in-water, not water-in-oil, emulsifying agent is suggested to disperse the fuel. Though an emulsifying agent is used for dispersing purposes, the reference does not discuss forming an emulsion, and it does not suggest use of occluded air.

Two papers by Coxon relate to water resistant blasting agents. The first describes a water-in-oil emulsion of fuel oil and ammonium nitrate poured over solid ammonium nitrate. The second is similar, but prefers an oil-in-water emulsifying agent. Neither paper teaches the presence of occluded air; instead, the blasting agent requires solid ammonium nitrate. Thus, both Coxon papers, as well as Davis, are similar to Egly.

U.S. Patent No. 3,004,842, to Rowlinson, describes melting solid ammonium nitrate and mixing it with fuel oil and an emulsifying agent to form a solid blasting agent. A small amount of water may be added to reduce the melting point of the ammonium nitrate. Foaming agents can be added to increase the product's sensitivity.

U.S. Patent No. 3,453,158, to Clay, describes a gel or thickened slurry containing aqueous ammonium nitrate, a gelling agent or thickener, air bubbles serving as a sensitizer, and particulate fuels or sensitizers. The district court found that Clay does not use an emulsion, let alone a water-in-oil emulsion, and that finding has not been shown to be clearly erroneous.

*Level of Skill In The Art*

The district court found that the person of ordinary skill in the art would be one skilled in the art of explosives formulation, having knowledge of and experience with the chemical and physical properties of explosives. The person should be a chemist or chemical engineer with at least a bachelor's degree and several years of practical experience. Also, he or she should have a working knowledge of the principles of emulsion chemistry as applied to explosives formulation.

*"Secondary" Considerations*

The district court stated that, in light of "substantial differences" between the prior art and the product claims, it is not necessary to consider secondary factors, though they were raised by Atlas. Hence, the district court's opinion does not contain a section on "secondary criteria" or otherwise attempt to identify such criteria under that label. Nevertheless, the district court found that "[t]he Bluhm patent solved the problem of finding a water resistent ANFO blasting agent that did not require chemical sensitizers". Moreover, the district court in essence found that the solution to the problem was unexpected.

Though the prior art describes water-in-oil emulsions containing dissolved ammonium nitrate, fuel oil, and a water-in-oil emulsifying agent, the district court found that the art does not suggest that the emulsion itself can serve as a blasting agent. Egly, for example, teaches that such an emulsion—without occluded air—serves as a sensitizer that can be poured over solid ammonium nitrate to form a blasting agent. Gehrig teaches that the emulsion serves as a blasting agent only in the presence of nitric acid. That the Egly sensitizer itself serves as a blasting agent when occluded air is added, or that the Gehrig blasting agent could serve in that capacity without nitric acid, was unexpected. Though occluded air was recognized as an ingredient that could be included in blasting agent compositions, e.g., to stablize the nitric acid containing product of Gehrig, the district court found that the references simply did not teach "that aeration can substitute for chemical sensitizers [e.g., nitric acid] in slurry explosives or that a water-in-oil emulsion is the most efficient system for entraining air".

Moreover, the district court found (and it has not been shown to be clearly erroneous) that the references cited by Du Pont deemphasize occluded air in emulsions and, hence, teach away from the importance of aeration. Egly and Davis do not mention

air or gas as an ingredient in their explosives, and one of the Coxon papers teaches that detonation performance may be improved by using emulsifiers to eliminate frothing (air) from explosives.

### Conclusion on Nonobviousness

In light of the differences between the claimed invention and prior art, the '978 solution to a troublesome problem, and the unexpected result that a water-in-oil emulsion of ammonium nitrate, fuel oil, and a water-in-oil emulsifying agent can serve as a blasting agent in the presence of occluded air, we agree with the district court's conclusion of nonobviousness.

Du Pont argues that it would have been obvious in 1966 to leave the nitric acid sensitizer out of Gehrig's slurry, intimately mix the fuel oil and ammonium nitrate, and sensitize the product in some other way, *e.g.*, with air. We agree with the district court, however, that neither Gehrig nor the other prior art suggests those changes to obtain an emulsion blasting agent. As stated by the district court:

> It is quite a leap from recognition that dry ANFOs could be sensitized by aeration to realization that if an ANFO slurry was placed in the proper form of a water-in-oil emulsion and aerated, it would not require chemical sensitizers for detonability. This leap would not have been obvious in 1966.

### V. *Enablement*

The district court rejected Du Pont's arguments of "overly broad", "overclaiming", and "non-enablement", and its argument that the broad scope of the claims is not supported by the limited disclosure present. In essence, those arguments are one: the '978 disclosure does not enable one of ordinary skill in the art to make and use the claimed invention, and hence, the claimed invention is invalid under 35 U.S.C. § 112, ¶ 1.

■ To be enabling under § 112, a patent must contain a description that enables one skilled in the art to make and use the claimed invention. *Raytheon Co. v. Roper Corp.*, 724 F.2d at 960, 220 USPQ at 599.

That some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive. *See, e.g., W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1557, 220 USPQ 303, 316 (Fed.Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *In re Angstadt*, 537 F.2d 498, 503, 190 USPQ 214, 218 (CCPA 1976). Determining enablement is a question of law. *Raytheon Co. v. Roper Corp.*, 724 F.2d at 959–60, 220 USPQ at 599.

Du Pont argues that the patent disclosure lists numerous salts, fuels, and emulsifiers that could form thousands of emulsions but there is no commensurate teaching as to which combination would work. The disclosure, according to Du Pont, is nothing more than "a list of candidate ingredients" from which one skilled in the art would have to select and experiment unduly to find an operable emulsion.

The district court held it would have been impossible for Bluhm to list all operable emulsions and exclude the inoperable ones. Further, it found such list unnecessary, because one skilled in the art would know how to select a salt and fuel and then apply "Bancroft's Rule" to determine the proper emulsifier. Bancroft's Rule was found by the district court to be a "basic principle of emulsion chemistry," and Du Pont has not shown that finding to be clearly erroneous.

■ We agree with the district court's conclusion on enablement. Even if some of the claimed combinations were inoperative, the claims are not necessarily invalid. "It is not a function of the claims to specifically exclude ... possible inoperative substances...." *In re Dinh-Nguyen*, 492 F.2d 856, 858–59, 181 USPQ 46, 48 (CCPA 1974) (emphasis omitted). *Accord, In re Geerdes*, 491 F.2d 1260, 1265, 180 USPQ 789, 793 (CCPA 1974); *In re Anderson*, 471 F.2d 1237, 1242, 176 USPQ 331, 334–35 (CCPA 1973). Of course, if the number of inoperative combinations becomes significant, and in effect forces one of ordinary skill in the art to experiment unduly in order to practice the claimed invention, the

claims might indeed be invalid. *See, e.g., In re Cook,* 439 F.2d 730, 735, 58 CCPA 1049, 169 USPQ 298, 302 (1971). That, however, has not been shown to be the case here.

Du Pont contends that, because the '978 examples are "merely prophetic", they do not aid one skilled in the art in making the invention.[1] Because they are prophetic, argues Du Pont, there can be no guarantee that the examples would actually work.

Use of prophetic examples, however, does not automatically make a patent non-enabling. The burden is on one challenging validity to show by clear and convincing evidence that the prophetic examples together with other parts of the specification are not enabling. Du Pont did not meet that burden here. To the contrary, the district court found that the "prophetic" examples of the specification were based on actual experiments that were slightly modified in the patent to reflect what the inventor believed to be optimum, and hence, they would be helpful in enabling someone to make the invention.

Du Pont argues that of some 300 experiments performed by Atlas before the filing of the '978 patent application, Atlas' records indicated that 40 percent failed "for some reason or another". The district court agreed that Atlas' records showed 40 percent "failed", but found that Atlas' listing of an experiment as a "failure" or "unsatisfactory" was misleading. Experiments were designated "failures", the district court found, in essence because they were not optimal under all conditions, but such optimality is not required for a valid patent. *Decca Ltd. v. United States,* 544 F.2d 1070, 1077, 210 Ct.Cl. 546, 191 USPQ 439, 444–45 (1976). *Accord, E.I. du Pont de Nemours & Co. v. Berkley & Co.,* 620 F.2d 1247, 1260, 205 USPQ 5, 10 (8th Cir. 1980). *Cf. Raytheon Co. v. Roper Co.,* 724

F.2d at 958, 220 USPQ at 598. The district court also found that one skilled in the art would know how to modify slightly many of those "failures" to form a better emulsion. Du Pont has not persuaded us that the district court was clearly erroneous in those findings.

Du Pont asserts that Atlas was able to produce suitable emulsions with only two emulsifiers, "Atmos 300" and "Span 80", and therefore, the disclosure should be construed to read upon only those two emulsifiers. However, Du Pont did not prove that the other disclosed emulsifiers were inoperable. The district court credited testimony by Atlas' expert, Dr. Fowkes, to the effect that he had successfully formed a number of detonable emulsions using a variety of emulsifiers specified in the '978 patent. Further, the district court found that one skilled in the art would know which emulsifiers would work in a given system. Indeed, the district court found that Du Pont's own researchers had little difficulty in making satisfactory emulsions with the emulsifying agents, salts, and fuels listed in the '978 patent. Those findings have not been shown to be clearly erroneous.

In sum, we conclude that Du Pont has failed to show that the district court erred in determining enablement.

### VI. *Inequitable Conduct*

This court has held "inequitable conduct" in the PTO to be a more appropriate label than "fraud". *J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553 at 1559 (Fed.Cir. 1984). Hence, this opinion will use the phrase "inequitable conduct" rather than "fraud".

Inequitable conduct requires proof by clear and convincing evidence of a threshold degree of materiality of the non-

---

**1.** The PTO Manual of Patent Examining Procedure (MPEP) § 608.01(p)(D) (5th ed. 1983), states:

Simulated or predicted test results and prophetical examples (paper examples) are permitted in patent applications. Working examples correspond to work actually performed and may describe tests which have actually been conducted and results that were achieved. Paper examples describe the manner and process of making an embodiment of the invention which has not actually been conducted. Paper examples should not be represented as work actually done. Paper examples should not be described using the past tense.

disclosed or false information. That threshold can be established by any of four tests: (1) objective "but for"; (2) subjective "but for"; (3) "but it may have been"; and (4) 37 C.F.R. § 1.56(a), *i.e.*, whether there is a substantial likelihood that a reasonable examiner would have considered the omitted or false information important in deciding whether to allow the application to issue as a patent. Slip op. at 10. The PTO standard is the appropriate starting point because it is the broadest and most closely aligns with how one ought to conduct business with the PTO. *Id.*

Inequitable conduct also requires proof of a threshold intent. That intent need not be proven with direct evidence. It may be proven by showing acts the natural consequences of which are presumably intended by the actor. *Id.* Proof of deliberate scheming is not needed; gross negligence is sufficient. Gross negligence is present when the actor knew or should have known of the materiality of a withheld reference. *Id.* at 1560. On the other hand, simple negligence, oversight or an erroneous judgment made in good faith is insufficient. *Id.*

Once the thresholds of materiality and intent are established as facts, the court must balance them and determine as a matter of law whether the scales compel a conclusion that inequitable conduct occurred. *Id.* If the court reaches that conclusion, it must hold the patent claims at issue unenforceable.

Du Pont argues that Atlas committed inequitable conduct by failing to tell the examiner that the examples were "prophetic" and, hence, in misleading the examiner into believing that the examples were actually performed. However, the district court found that the examples were written in the present tense to conform with the PTO requirements on prophetic examples. Moreover, the district court found that all but one of the examples were based on actual experiments and only slightly modified to reflect the inventor's notion of the most effective formulation. Consequently, the district court found, there was no intent on the part of Atlas to mislead the

PTO. Du Pont has not shown those findings to be clearly erroneous. Even if intent could be inferred, and if the examples were prophetic but not disclosed to the examiner as such, Du Pont has not shown the nondisclosure to have been material, *i.e.*, important to an examiner in allowing the patent to issue.

Du Pont asserts that Atlas' conduct cannot be distinguished from that in *Grefco, Inc. v. Kewanee Industries, Inc.*, 499 F.Supp. 844 (D.Del.1980), *aff'd without publ. opinion*, 671 F.2d 495 (3d Cir.1981). We disagree. In *Grefco*, the patentee, to convince the examiner of the invention's superiority, presented "test results" based on tests that it knew never occurred, told the examiner the invention had been successfully tested when it had twice failed, and withheld information about those failures from the examiner. Intent and materiality were clearly established in *Grefco*, and the court in weighing the two factors held that there was inequitable conduct. That is not true here.

Du Pont argues that Atlas did not disclose its numerous "failures" and that it "padded" the disclosure with emulsifiers it knew would not work. The district court, however, found that Du Pont failed to prove that any of the emulsifiers were inoperative and the court found that the evidence on the "failed" experiments was not dispositive. Du Pont has not shown any clear error on the part of the district court in those findings.

Du Pont also alleges inequitable conduct in Atlas not disclosing to the examiner its Aquanite gel, the commercial version of the invention of its Gehrig patent. Though the district court found Aquanite to be "pertinent", it found no intent in the nondisclosure because Atlas had disclosed the Gehrig patent to the examiner. Du Pont has not shown any clear error in that finding. *Cf. Vandenberg v. Dairy Equipment Co.*, 740 F.2d 1560, 1568–69 (Fed.Cir.1984). (Vandenberg disclosed a PX–15 device as prior art but failed to describe it as its own prior invention; the disclosure was held to

be inconsistent with the intent necessary for inequitable conduct).

## VII. *Infringement*

### *Literal Infringement*

■ Determining infringement requires claim construction as a preliminary step. *See, e.g., Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983). If properly construed claims read on the infringing product, there is literal infringement. *Id.* at 1571, 219 USPQ at 1142.

Du Pont's blasting agents are water-in-oil emulsions containing water, ammonium nitrate, fuel oil, occluded gas, and an emulsifying agent. Unlike the claimed invention, Du Pont uses as the emulsifying agent sodium oleate, which is formed *in situ* by adding sodium hydroxide and oleic acid to the other emulsion ingredients. Sodium oleate is normally an oil-in-water emulsifying agent but in the environment of the Du Pont product (*i.e.,* a high salt concentration leading to phase inversion), the sodium oleate acts as a water-in-oil emulsifying agent. The Du Pont product, and the *in situ* process of forming it, are the subject of U.S. Patent No. 4,287,100, issued to Owen and assigned to Du Pont.

The district court construed the '978 claim term "water-in-oil type emulsifying agent" as excluding compounds that normally function as oil-in-water emulsifying agents, *e.g.,* sodium oleate. That claim construction prompted the district court to find no literal infringement. Atlas does not contest that finding and, for purposes of appeal, we accept it and the underlying claim construction.

### *Doctrine of Equivalents*

■ A product that does not literally infringe can infringe under the doctrine of equivalents. Designed to protect a patentee from an infringer who appropriates the invention but avoids the literal language of the claims, the doctrine allows a finding of infringement when the accused product and claimed invention perform substantially the same function in substantially the same way to yield substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608–09, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 900, 221 USPQ 669, 679 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). The district court found that the Du Pont products and the claimed invention are equivalent, and Du Pont has not shown that finding to be clearly erroneous.[2]

The district court's opinion clearly delineates the *Graver Tank* tripartite test of substantially the same function, way, and result but then, adopting an analysis found in *Ziegler v. Phillips Petroleum Co.,* 483 F.2d 858, 870, 177 USPQ 481, 487 (5th Cir.), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973), focuses on the "function, purpose, and quality" of the emulsifying agents of Du Pont and the claimed invention. That focus, argues Du Pont, was wrong because it ignored the *Graver Tank* tripartite test. We disagree.

Though *Graver Tank* articulates the tripartite test of "function, way, and result", it also states that the doctrine of equivalence should not be the prisoner of a rigid formula. Moreover, *Graver,* which as here compared a claimed mixture with an accused mixture in which one ingredient of the claimed mixture was changed, stated:

> "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform."

*Id.* at 611, 70 S.Ct. at 857.

■ Such consideration makes sense. Where, as here, the accused product avoids literal infringement by changing one ingre-

---

**2.** One of Du Pont's products includes aluminum, which is not present in representative claim 1. It is, however, present in dependent claim 14. Moreover, the addition of an ingredient by Du Pont does not necessarily avoid infringement of claim 1. *See, e.g., Radio Steel & Mfg. Co. v. MTD Products, Inc.,* 731 F.2d 840, 848, 221 USPQ 657, 663–64 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1482, 221 USPQ 649, 653 (Fed.Cir. 1984).

dient of a claimed composition, it is appropriate for a court to consider in assessing equivalence whether the changed ingredient has the same purpose, quality, and function as the claimed ingredient. If it does, the accused and claimed products should meet the *Graver Tank* tripartite test of "function, way, and result".

That the district court focused on the function, quality, and purpose of the emulsifying agents does not mean it ignored the basic tripartite test which it expressly referred to in the opinion. We infer from that express reference, and from the opinion as a whole, that the district court did in fact find that the "function, way, and result" test was satisfied. *See ACS Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1582, 221 USPQ 929, 936 (Fed.Cir. 1984) (this court will infer findings that were obviously necessary to the court's opinion).

Du Pont argues that, because its emulsion product was patented after the '978 patent issued, its product avoids infringement by equivalence. According to Du Pont, *"so long as direct infringement is lacking*, the grant of a patent to an accused infringer constitutes a prima facie determination of non-equivalence and, accordingly, of non-infringement" (Du Pont's emphasis). Atlas disagrees. So do we.

Du Pont concedes that, if Atlas patents A + B + C and Du Pont then patents the improvement A + B + C + D, Du Pont is liable to Atlas for any manufacture, use, or sale of A + B + C + D because the latter directly infringes claims to A + B + C. Du Pont urges, however, that it is not liable for manufacture, use, or sale of patented improvement A + B + C', even

though A + B + C' is "equivalent" to A + B + C. We reject Du Pont's attempted distinction. Whether Du Pont makes A + B + C + D or A + B + C', Du Pont has used the gist of Atlas' invention to devise a patentable composition. There is no compelling reason to hold Du Pont liable for infringement in one instance but not the other.[3]

 We agree with *Bendix Corp. v. United States*, 199 USPQ 203 (Ct.Cl. Trial Div.1978), *aff'd*, 600 F.2d 1364, 220 Ct.Cl. 507, 204 USPQ 617 (1979). There the trial judge said that where defendant has appropriated the material features of the patent in suit, infringement will be found "even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement." 199 USPQ at 221–22. Though Du Pont argues that cases from other courts support a contrary result, we are not bound by those cases and in any event find them unpersuasive.[4]

More persuasive is the reasoning of *Herman v. Youngstown Car Mfg. Co.*, 191 F. 579, 584–85, 112 CCA 185 (6th Cir.1911). After finding equivalence, the court rejected appellant's contention that its receipt of a patent negates infringement:

A patent is not the grant of a right to make or use or sell. It does not, directly or indirectly, imply any such right. It grants only the right to exclude others. The supposition that a right to make is created by the patent grant is obviously inconsistent with the established distinctions between generic and specific patents, and with the well-known fact that a very considerable portion of the patents

---

**3.** Of course, if A + B + C' were patented because of unexpected results, those unexpected results might prompt a finding of no equivalence. That finding, however, would exist because, under the *Graver Tank* tripartite test, the "results" achieved by the claimed and accused products would be substantially different. The district court in this case did not find any such unexpected results. Though it found that Du Pont's products were more stable than those of the '978 patent, that is not necessarily inconsistent with equivalence. Equivalence does not require that the claimed invention and accused

product have identical results; the results can be substantially the same and the accused product can be an improvement. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d at 901–02, 221 USPQ at 679–80; *Decca Ltd. v. United States*, 544 F.2d 1070, 1080–81, 210 Ct.Cl. 546, 191 USPQ 439, 448 (1976).

**4.** We are bound by opinions of our predecessor courts, the Court of Claims and CCPA. *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982).

granted are in a field covered by a former relatively generic or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder.

Another reason sometimes advanced for supposing that the structure of the second does not infringe the claim of the first patent is that the Patent Office has declared that a patentable difference exists. The premise is sound, but not the conclusion. In examining the second application, the Patent Office has no concern with the scope of the claim of the first, and does not and must not pay any attention thereto. It is concerned only with the early disclosure by the specification and drawings. Patentable difference does not of itself tend to negative infringement. It may just as well be based upon infringement, plus improvement; and improvement may lie in addition, simplification, or variance.

*See also Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 43, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929) (where there is substantiality of function, way, and result, infringement cannot be avoided by any presumptive validity attaching to the issuance of a patent to the infringer); *Sure Plus Mfg. Co. v. Kobrin,* 719 F.2d 1114, 1117 (11th Cir.1983) (no presumption of non-infringement arises from the issuance of a patent to the infringer); *Freeman v. Altvater,* 66 F.2d 506, 512, 18 USPQ 186, 192–93 (8th Cir.), *cert. denied,* 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 598 (1933) (the court after finding equivalence stated that the issuance of a patent merely raises a presumption of validity, not a presumption of non-infringement).

Du Pont contends that one skilled in the art in 1966 would not have known that the '978 and Du Pont products were equivalent. It is not a requirement of equivalence, however, that those skilled in the art know of the equivalence when the patent application is filed or the patent issues. That question is determined as of the time infringement takes place. In *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1365, 219 USPQ 473, 483 (Fed. Cir.1983), this court held that devices changing the patented invention with advances developed subsequent to the patent could infringe under the doctrine of equivalents. *See also American Hosp. Supply Corp. v. Travenol Labs., Inc.,* 745 F.2d 1, 9, 223 USPQ 577, 583 (Fed.Cir.1984).

Du Pont also argues that Atlas is "estopped" from asserting that the '978 claims cover the use of an oil-in-water emulsifier such as sodium oleate because Atlas was unable to use that type of emulsifier effectively. We reject Du Pont's argument on two grounds.

First, finding equivalence is not inconsistent with a patentee's unsuccessful attempt to make the accused product. The focus in assessing equivalence is on whether the accused product performs substantially the same as the claimed product in function, way and result—it is not on the patentee's ability to devise a product equivalent to the patented product. Indeed, the patentee's incentive to devise an equivalent product is often less than a competitor's, which alone may account for the competitor's success and the patentee's failure in devising the equivalent product. *See, e.g., Leesona Corp. v. Varta Batteries, Inc.,* 522 F.Supp. 1304, 1328, 213 USPQ 222, 241 (S.D.N.Y.1981).

Second, the record submitted to this court makes no reference to any type of estoppel. That strongly suggests that estoppel was not raised before the district court. *Bockoven v. Marsh,* 727 F.2d 1558, 1566 (Fed.Cir.1984). Because a party may generally not argue on appeal an issue not raised below, *Weinar v. Rollform Inc.,* 744 F.2d 797, 804, 223 USPQ 369, 372 (Fed.Cir. 1984); *Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1388, 219 USPQ 569, 575 (Fed.Cir.1983), the estoppel argument is not properly before us.

Du Pont also argues that, because its product is formed in situ, it is different from the claimed product. It is the claimed product, however, not the process of forming it, that is involved. The district court found that the Du Pont emulsion, though it uses what is normally an oil-in-water emulsifier, "acts as a water-in-oil emulsifier", "caus[ing] a water-in-oil emulsion to form",

and is otherwise substantially the same as the '978 emulsion. Those findings have not been shown to be clearly erroneous.

Du Pont further contends that the district court erred in considering the "heart of the invention" in its infringement analysis. We disagree. Although there is no legally recognized "essence" or "heart" of the invention in determining validity, *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 220 USPQ 303 (Fed.Cir. 1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984), it can be applicable in a determination of infringement under the doctrine of equivalents. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567, 220 USPQ 97, 101 (Fed.Cir.1983). Moreover, the district court's "heart of the invention" analysis was supplemental to its finding that the *Graver Tank* tripartite test was satisfied.

Finally, Du Pont argues that the district court erred in not addressing in its opinion which of the individual claims are infringed. However, the district court specified the infringing claims in its judgment, and we review judgments, not statements in opinions. *See, e.g., Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.,* 730 F.2d at 1463, 221 USPQ at 489. Reviewing the judgment, we conclude that the district court did not commit clear error in finding infringement of the claims on appeal.

### VIII. *Conclusion*

Having considered all of Du Pont's arguments, the district court's decision that the '978 patent claims on appeal (1–5, 7, 12–14, and 16–17) are not invalid under 35 U.S.C. §§ 102, 103, and 112, that there was no inequitable conduct before the PTO, and that the claims on appeal were infringed, is *affirmed.*

AFFIRMED.