**SMITHKLINE DIAGNOSTICS, INC.**

v.

**HELENA LABORATORIES CORPORATION.**

**Civ. A. No. B–83–10–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 2, 1987.

As Amended June 19, 1987.

Gilbert I. Low, Orgain, Bell & Tucker, Beaumont, Tex., Donald R. Dunner, Allen M. Sokal, Thomas H. Jenkins, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for plaintiff, SmithKline Diagnostics, Inc.

Walter J. Crawford, Jr., Wells, Peyton, Beard, Greenberg, Hunt and Crawford, Beaumont, Tex., Charles R. Rutherford, Jerold I. Schneider, Cullen, Sloman, Cantor, Grauer, Detroit, Mich., for defendant, Helena Laboratories Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOE J. FISHER, District Judge.

The above-entitled and numbered cause came on for trial, and the Court having considered the pleadings, having heard the testimony and determined the credibility of witnesses, having examined physical exhibits and studied post-trial submissions of the parties, and all of the evidence, and having heard the arguments and reviewed the briefs of counsel, now makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedure. If any Finding of Fact should be construed as a Conclusion of Law, it is to be so considered; and should any Conclusion of Law be construed as a Finding of Fact, it is to be so considered.

## FINDINGS OF FACT

1.

This is a suit for infringement of U.S. Patent No. 4,365,970 (the Lawrence patent or the '970 patent) brought by SmithKline Diagnostics, Inc. (SKD) against Helena Laboratories Corporation (Helena).

2.

SKD owns patent in suit No. 4,365,970 to a diagnostic test for detecting occult blood in fecal matter.

3.

The test is known as a fecal specimen test slide. It includes paper containing a compound, guaiac, that turns blue in the presence of a developing solution and a catalyst, such as the hemoglobin in blood.

Thus, a blue color indicates the presence of blood and is referred to as a "positive" result. The absence of blue indicates the absence of blood and is referred to as a "negative" result. It is important to verify that the guaiac paper and the developing solution are working properly. False negative or positive results can cause failure to detect colorectal cancer or unnecessary, exhaustive clinical investigations and patient anxiety.

4.

The '970 patent discloses and claims the first fecal occult blood specimen test slide having built-in positive and negative monitors for verifying the proper performance of the slide. The slide contains, besides the test area where the fecal specimen is applied, an isolated area divided into two sections. One additionally contains a catalyst—a compound that reacts to environmental conditions in a manner similar to hemoglobin—is the positive monitor. The second section lacks the catalyst and consists of the guaiac-impregnated paper alone, and is the negative monitor.

5.

After developer is added to the paper opposite the fecal specimen, developer is added to the positive and negative monitors. A blue color on the positive monitor means the reagents are working properly. The absence of a blue color on the negative monitor means the slide has not been contaminated.

6.

The invention of the '970 patent satisfied a long-felt need for a satisfactory built-in test for verifying the performance of fecal occult blood test slides. This need was recognized as early as the 1950's in a publication calling for use of external controls. External controls have been virtually unused because they are cumbersome. Nevertheless, they went essentially unchanged for thirty years.

7.

External controls had other, serious deficiencies. They were generally used as a "batch test," i.e. once for each batch of

samples, which left the possibility of contamination or other error that did not affect the whole batch. Doctors that inquired about testing the slides were advised only to use a dilute blood solution as a positive control. Negative controls that would detect false positives were not suggested. Furthermore, the slides were used by people unskilled in the techniques necessary to make, store, and use controls. Despite the critical need for controls that worked, those looking for a solution to the problem experimented only with external controls.

8.

Dr. Lawrence of SKD, a coinventor of the '970 patent, followed a different approach, namely, built-in positive and negative controls on each slide. This had the advantage of verifying the performance of every slide and it was much easier to use than external controls. Furthermore, a built-in positive monitor printed during manufacturing gave more reproducible results than external controls that were applied in variable amounts. Dr. Lawrence's approach was also new in that he no longer sought only controls that simulated feces. Monitors that indicated only whether the slide and developer were working properly avoided the confusion that could result from comparing the test results on the actual fecal specimen and on the monitors.

9.

Dr. Lawrence experimented to test his ideas. By February 23, 1979, Dr. Lawrence had conceived of the definite and permanent idea of the complete and operative fecal occult blood test slide with built-in monitors that was later specified in claim 1 of the '970 patent and used in SKD's Hemoccult slides, as evidenced by his laboratory notebook and written and oral reports and demonstrations to Mr. S. Wayne Kay, who corroborated Dr. Lawrence's testimony. Dr. Lawrence had done enough work by February 23, 1979 to know that his basic concept worked satisfactorily.

10.

Claims 1, 2, 4 and 5 are alleged to be infringed (35 U.S.C. § 271) by Helena's Coloscreen products. Helena has denied infringement and counterclaimed for a declaration of noninfringement and patent invalidity for obviousness. (35 U.S.C. § 103). Much of the evidence relating to the issues of validity and infringement involved the proper interpretation of the phrase "reacts to environmental conditions in a manner similar to hemoglobin" which appears not only in the patent specification but in all of the asserted claims.

11.

The subject matter of this lawsuit is a product including a chemical test for fecal occult blood testing. Chemical tests of stool samples for occult blood was a well-known technique for many years prior to the Lawrence patent.

For many years, SKD marketed a paper "slide" under the trademark "Hemoccult". The Hemoccult slide contained locations for one or more stool samples.

12.

In 1980, Helena, in connection with its Coloscreen slides, supplied a control system under the trademark "Colochek," which allowed verification that the chemicals were functioning properly. Helena advertised and marketed the use of the control system on each slide. The control system marketed by Helena "looked like" the fecal specimen and the positive control included hemoglobin.

By 1980, Gamma Biologicals, of Houston, was also marketing a competitive slide product with a control system including hemoglobin as the positive control.

13.

According to the Lawrence patent description, because of the possibility of false results, controls should be provided for each slide. The positive control should turn color if everything was working properly and the negative control should remain colorless (no color change) if everything was working properly. This was accomplished by placing an additional chemical in the positive control area; the preferred chemical was hemin.

14.

When Lawrence and Townsley filed for a patent, they defined their invention as an

improvement on the slide in the following language (from original claim 1):

"[In a specimen test slide . . .] the improvement comprising a control area having a positive and negative monitor, said control area positioned on a portion of the sheet facing the rear panel."

### 15.

The Examiner ultimately agreed to grant a patent if SKD was more specific about the positive and negative monitors. The claims were amended as follows:

". . . said *positive monitor* additionally including a compound that *reacts to environmental conditions in a manner similar to hemoglobin.*" (Emphasis added)

### 16.

■■■■ The patent claims measure the invention; it is the claims which are to be considered both for purposes of validity and infringement. The claims must be interpreted in the context of the patent specification, the prior art, the level of skill in the art, the meaning of terms to those of ordinary skill in the art and the patent office proceedings. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666 (Fed.Cir.1984). After evaluating all of the evidence including considering the credibility of witnesses, the Court is satisfied that Helena has established by clear and convincing evidence that the phrase "reacts to environmental conditions in a manner similar to hemoglobin" is to be interpreted to exclude hemoglobin itself.

### 17.

Claims 1, 2, 4 and 5 are asserted. Helena contends that these claims are invalid for obviousness under 35 U.S.C. § 103.

■■■ The Lawrence patent is presumed valid. 35 U.S.C. Section 282. The presumption of validity casts a burden on Helena which remains with Helena throughout the trial both as to presenting evidence and as to persuasion, to rebut the presumption of validity by clear and convincing evidence. To determine if Helena has met its burden of proof, this Court must follow the

four part test set forth in *Graham v. John Deere*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), namely: (1) the scope of the prior art must be determined; (2) the differences (if any) between the prior art taken as whole and the claims must be ascertained; and (3) the level of ordinary skill in the art must be ascertained. The fourth element is identified by the generic title "Secondary Factors" and must always be considered if established by the evidence. It is against this background that the obviousness or non-obviousness of the claimed subject matter, taken as whole, to one of ordinary skill in the art at the time the invention was made, is to be determined. *Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376 (Fed. Cir.1983).

### 18.

The scope of the prior art includes the 1979 International Symposium, the 1980 product and advertisements of both Helena and Gamma Biologicals, and the U.S. Patents to Friend, 4,175,923; Pagano, 3,996,006; and Higgins, 3,838,012. Having considered this prior art, the Court finds that the differences between the prior art taken as a whole and the claims is the provision of a positive monitor which reacts to environmental conditions in a manner similar to hemoglobin (which excludes hemoglobin since hemoglobin was used in the prior art positive monitors).

### 19.

■■■ The level of ordinary skill in the art is a person with a Bachelor of Science degree and several years of experience in designing or evaluating fecal occult blood specimen test slides. That was SKD's interrogatory answer which Helena accepted for the purpose of this litigation. If the phrase "reacts to environmental conditions in a manner similar to hemoglobin" is interpreted to exclude hemoglobin, Helena has not sustained its burden of proof that the claimed invention is obvious. However, if that phrase is interpreted to include hemoglobin, then Helena has overwhelmingly met its burden of proof, by more than clear and convincing evidence, that the asserted

claims are invalid. In this latter regard, SKD, in its presentation of the secondary factors, has failed to establish by a preponderance of the evidence any nexus or relationship between the secondary factors and the claimed invention and Helena has affirmatively demonstrated that the secondary factors are based upon things other than the claimed invention. *See generally, Pentec v. Graphic Controls*, 776 F.2d 309 (Fed.Cir.1985), *Cable Electric v. Genmark*, 770 F.2d 1015 (Fed.Cir.1985).

### 20.

SKD contends that Helena's Coloscreen slide products infringe the asserted claims. Initially, Helena employed hemoglobin as the positive monitor. Later, Helena changed to lead acetate as the positive monitor, but there was a time interval during which Helena lead acetate products and Helena hemoglobin products were simultaneously marketed.

### 21.

SKD acknowledges that lead acetate, as a positive monitor, does not infringe because it does not react to environmental conditions in a manner similar to hemoglobin. However, SKD bases its infringement contention as to lead acetate-based products on an estoppel theory because Helena did not immediately change its package insert when the positive monitor was changed from hemoglobin to lead acetate. Thus, while Helena was selling slides with the lead acetate positive monitor, the package insert referred to the positive monitor as being hemoglobin.

### 22.

■■■■ Patent infringement is predicated upon 35 U.S.C. § 271. On the issue of infringement it is SKD which bears the burden of proof by a preponderance of the evidence. The law of patent infringement requires a multi-part analysis. First, if everything in one asserted patent claim is found in the accused product, there may be literal infringement. *Graver Tank v. Linde Air Products*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

### 23.

■■■ SKD has not met its burden of proof, by a preponderance of the evidence, that Helena Coloscreen slide products containing hemoglobin infringe the asserted claims. Rather, these products do not infringe because the phrase "reacts to environmental conditions in a manner similar to hemoglobin" must be interpreted to exclude hemoglobin, otherwise the claims are invalid for obviousness. Hence, there is no literal infringement. *Graver Tank v. Linde Air Products Co., supra.* Based upon, inter alia, the contemporaneous experimentation done by the inventors, the prior art, the patent office proceedings, and the testimony of those skilled in the art, the Court finds that the claims cannot be interpreted, literally, to include hemoglobin.

### 24.

■■■ Since the Helena Coloscreen products containing hemoglobin do not infringe, clearly the products containing lead acetate do not infringe even under the estoppel theory. The Court finds, in addition, that SKD has not met its burden of proof by a preponderance of the evidence as to the facts necessary to support a finding of estoppel even if hemoglobin did infringe.

### 25.

■■■■ In the absence of literal infringement, a Plaintiff *may* be entitled to rely upon the doctrine of equivalents. Prosecution history estoppel arises in this case, inter alia because the changes to the patent claims were made to avoid the prior art rejection. The Court is satisfied, having considered the credibility and demeanor of witnesses and the evidence relied upon by the witnesses, that the claim was narrowed in scope to avoid a prior art rejection, where the prior art employed the hemoglobin positive monitor. Hence, the claims as narrowed exclude hemoglobin. The doctrine of prosecution history estoppel precludes the Court from utilizing equivalence to recapture hemoglobin within the patent claims. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351 (Fed.Cir.

**628**

1983). The Court finds that SKD did not meet its burden of proof, by a preponderance of the evidence, that it is entitled to any equivalency with respect to the accused use of hemoglobin.

### 26.

Furthermore, even if the claims "literally" include hemoglobin, there is no infringement (under the reverse doctrine of equivalents) if hemoglobin operates differently from those things which SKD tried successfully. *Westinghouse v. Boyden Power Brake Company*, 170 U.S. 537, 568, 18 S.Ct. 707, 722, 42 L.Ed. 1136 (1898). *Polaroid v. Eastman Kodak*, 789 F.2d 1556 (Fed.Cir.1986); *SRI Int' v. Matsushita*, 775 F.2d 1107 (Fed.Cir.1985). According to SKD's inventor Lawrence, many compounds including *hemoglobin* did not work. SKD has not met the burden of establishing infringement either literally or by equivalency, and, further, there is no infringement under the reverse doctrine of equivalents.

### 27.

Considering that this matter may be appealed, the Court expressly addresses the issue of willful infringement. There has been no showing by SKD of willful infringement. Neither party has been granted leave to supplement its case on this point. Accordingly, if the infringement determination is reversed on appeal, the Court expressly finds that any infringement is not willful and that SKD has not met its burden of proof of willful infringement.

### CONCLUSIONS OF LAW

#### I.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a). Venue is proper pursuant to 28 U.S.C. § 1400(b).

#### II.

The Lawrence patent 4,365,970 is presumed valid. 35 U.S.C. § 282. Helena as the challenger must demonstrate invalidity by clear and convincing evidence. *SSIH Equipment v. USITC*, 718 F.2d 365, 375 (Fed.Cir.1983). This it has failed to do, and the Lawrence Patent 4,365,970 owned by SmithKline Diagnostics, Inc. is valid.

#### III.

Helena's challenge to validity is based upon obviousness. 35 U.S.C. § 103. The asserted claims are patent claims 1, 2, 4 and 5. Each claim includes the phrase that the positive monitor "reacts to environmental conditions in a manner similar to hemoglobin". Based upon the evidence, this phrase excludes hemoglobin and, with hemoglobin excluded, Helena has not met the burden of proof of invalidity.

#### IV.

SKD has the burden of proving infringement. Since the asserted claims, based on the record, must be interpreted to exclude hemoglobin (otherwise they are invalid for obviousness), and since Helena used either Hemoglobin (or lead acetate), SKD has not met the burden of proof of infringement either literally or under any equivalency to which SKD might be entitled, taking into account the prior art and the Patent Office proceedings. *Graver Tank v. Linde Air Products, supra.*

#### V.

In summary, the Court finds and concludes that SKD U.S. Patent # 4,365,970 (the Lawrence Patent referred to as '970 Patent) is not invalid and that Helena Laboratories Corporation has failed in proving the invalidity of said Patent '970; further the Court finds and concludes that SmithKline Diagnostics, Inc. has failed to prove any infringement of said Patent '970 by Helena Laboratories, Inc. and that neither party is entitled to attorney's fees.

It is, therefore, ORDERED, ADJUDGED and DECREED that judgment be entered for SmithKline Diagnostics, Inc. as owner of the valid U.S. Patent # 4,365,970, and that judgment be entered for Helena Laboratories, Inc. of no infringement of said Patent '970. Further, no attorney's fees

are to be awarded either of the parties and that court costs are to be assessed equally against each party.