PRECISION METAL FABRICATORS, INC., Plaintiff,

v.

JETSTREAM SYSTEMS COMPANY, DI- VISION OF OERLIKON MOTCH COR- PORATION and Stanley Lenox, De- fendants.

No. C 86 4516 AJZ.

United States District Court, N.D. California.

Feb. 8, 1988.

Flehr, Hohbach, Test, Albritton & Herbert, Elmer S. Albritton, William J. Egan, III, Luann Cserr, San Francisco, Cal., for plaintiff.

Willian Brinks Olds Hofer Gilson & Lione Ltd., Gary M. Ropski, Chicago, Ill., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ZIRPOLI, District Judge.

This is an action commenced by plaintiff, Precision Metal Fabricators, Inc. (hereinafter "Precision"), against defendants Jetstream Systems Company (hereinafter "Jetstream"), and Stanley Lenox, for infringement of three U.S. patents, Nos. 4,347,022 (the " '022 patent"), 4,456,406 (the " '406 patent"), and 4,568,223 (the " '223 patent"). This court has jurisdiction under 28 U.S.C. § 1338(a).

Defendants have moved for summary judgment on the ground that Jetstream's air conveying equipment does not infringe plaintiff's patents. Defendants also claim that the '223 patent is invalid because it does not satisfy the enablement requirements of 35 U.S.C. § 112. Although defendants originally challenged the '022 patent and the '406 patent on enablement grounds, they have since withdrawn the enablement argument with respect to those patents.

## DISCUSSION

### I. The Standard for Summary Judgment

Summary judgment is rarely appropriate in patent infringement actions. *Chemical Engineering v. Essef Indus.*, 795 F.2d 1565, 157 (Fed.Cir.1986). However, summary judgment may be granted where the movant has supported its motion with affidavits establishing that it is entitled to judgment, and the non-movant fails to come forward with specific facts showing that there is a genuine issue for trial. *Id.;* Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, the non-movant must show that, assuming all inferences in its favor, "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### II. Non–Infringement

The patents in suit relate to air conveyors. Defendants' air conveyors are used to convey empty soft drink or beer cans in the process of manufacture or filling. The air conveyor lifts the cans with air from holes in a deck plate, and also propels the cans forward through the use of air directed at an angle from the vertical.

Precision asserts infringement of only certain claims of the patents: claims 1 and 8 of the '022 patent; claims 1, 6, and 7 of the '406 patent; and claims 1 and 2 of the '223 patent.

Defendants assert that their equipment does not infringe plaintiff's patents literal-

ly or under the doctrine of equivalents. Alternatively, defendants assert that their equipment does not infringe plaintiff's patents based on the reverse doctrine of equivalents.

### A. *Literal Infringement*

 To establish literal infringement, plaintiff must show that defendants' equipment embodies each and every element of plaintiff's claim. *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed.Cir.1987). In determining whether the claims are infringed, the court will compare the accused equipment to the patent claim, not to plaintiff's equipment as sold. *See SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed.Cir.1985).

#### 1. Patent '022

The basic features of the '022 patent are a vertical barrier means and a cover that has perforated and solid portions. The solid portions of the cover, which are situated above the vertical barrier means, create higher air pressure, causing the cans to separate and move around the vertical barrier. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Defendants' Memo") at 16:12–18. The exact wording of the claim is "a vertical barrier means positioned between the table surface and the cover such that the objects moving under the solid cover separate and pass to either side of the barrier means." Defendants' Appendix of Exhibits, Tab H, at 1:16–20. This wording suggests a causal connection between the solid portion and the vertical barrier means. Otherwise, the pressure zone created by the solid cover would not aid in the separation of the cans.

Defendants claim that their equipment does not have such a solid cover. Rather, defendants' products have "uniformly per-

forated" covers, and the covers do not create high pressure zones. *See* Defendants' Appendix of Exhibits, Tab A, at ¶¶ 22–23 ("The jetstream covers are uniformly perforated, containing no solid portions as described in the '022 patent."), and Tab B, at ¶ 8c (Jetstream's solid covers start after the vertical barrier, not on top of it. The Jetstream equipment is thus essentially different in "geometry and purposes" from plaintiff's equipment.).

However, plaintiff's witnesses observed defendants' equipment, and they declare that it has a solid cover overlying the vertical barrier.[1] *See* Supplemental Declaration of Harris Zimmerman, at ¶ 8c.

 Since there is conflicting evidence regarding whether defendants' equipment has a solid cover over the vertical barrier means, reasonable jurors could differ depending on issues of credibility. Thus, a genuine issue of fact exists as to literal infringement of the '022 patent.

#### 2. Patent '406

The '406 patent requires covers that have both imperforate and perforated portions, so that the air pressure between objects under the imperforate cover is greater than the pressure under the perforated cover. This pressure provides a barrier against objects tending to move into the space beneath the imperforate portions, slowing the objects down and causing them to separate. Defendant's Appendix of Exhibits, Tab H. Claim 1 of the '406 patent requires that the imperforate portions of the cover cause high pressure zones that "assist in guiding objects being transported." *Id.* Claims 6 and 7 of the '406 patent require that the increased pressure zones cause cans "to move away from each other." *Id.*

Defendants claim that their equipment does not have solid portions of covers that create high pressure zones. Defendant's

---

**1.** Plaintiff also points to an opinion letter and illustration prepared for defendant by a patent expert, which plaintiff received in conjunction with a settlement offer. These documents are inadmissible. Federal Rule of Evidence 408 excludes evidence of settlement offers, but it does not exclude "otherwise discoverable evidence."

Fed.R.Civ.P. 26(b)(4) provides that opinions of experts who are not expected to testify at trial are not discoverable absent exceptional circumstances. Since there are no exceptional circumstances in this case, the expert opinion and illustration are not "otherwise discoverable." Accordingly, this court disregards this evidence.

Appendix of Exhibits, Tab A, at ¶ 25 ("[The Jetstream equipment] has no area in which a solid cover portion creates a high pressure zone where objects have greater separation than objects under perforated covers."). Defendant's covers are uniformly perforated, except for a small portion around each edge which is imperforate.[2] See Addendums C and D to Plaintiff's Memo (Parts marked "A" and "B" are solid). Defendants assert that these small imperforate portions do not create high pressure zones. Defendants' Appendix of Exhibits, Tab B, at ¶¶ 8, 9 ("In the Jetstream equipment, the solid covers do not have any effect on the separation of cans into two channels, whereas in the PMF equipment, the solid covers are designed to separate and move the containers away from each other."), and Tab C, at ¶ 11. In substantiating its claim that these portions do not create pressure zones, defendants note that such pressure zones would inhibit the operation of its equipment "because cans could not flow down the conveyor— they would be stopped every few feet by a lateral strip creating a high pressure barrier." Defendants' Reply, at 11:7–10.

Plaintiff presents evidence indicating that defendants' equipment does create high pressure zones. Ronald Lenhart, the president of Precision, constructed an air table based on specifications from defendants' equipment. When Lenhart measured the air pressure with a manometer, the air pressure under the imperforate portions of the equipment's cover was higher than that under the perforated portions. See Appendix to Supplemental Opposition, at Tab 15 (Lenhart deposition). Later, Lenhart measured the air pressure on actual Jetstream equipment and discovered that the air pressure was higher under the imperforate por-

tions of the cover. See Appendix to Plaintiff's Request for Continuance, at Tab 2, Exhibit B at ¶ 13.

Based on the conflicting evidence, this court cannot determine whether the solid portions of defendants' covers create a high pressure zone. However, this conclusion does not preclude the court from finding that there is no literal infringement of the '406 patent. The claims of the '406 patent require that the high pressure zones "assist in guiding objects" and that they cause the objects to "move away from each other." In the absence of a causal connection between the variable air pressures and guidance of the cans, plaintiff's patent is not infringed.

Defendants claim that the solid portions of their covers are created because several pieces of material are needed to make up the cover. These pieces are periodically attached to one another, creating a break between the systematically perforated covers. Plaintiff claims that these periodic strips of solid cover are intentional. According to plaintiff, these strips cause the cans to periodically slow down to prevent jamming. See Appendix to Supplemental Request for Continuance, at Exhibit 4 at ¶¶ 18, 20.[3]

Even assuming that plaintiff's theory is accurate, plaintiff's patent is not infringed. A slowing effect is not tantamount to assistance in guiding the cans, nor does it establish that defendants' equipment causes the cans to move away from each other. Plaintiff presents no evidence, other than bare conclusory statements, showing that the strips assist in guidance or cause cans to move away from each other. Conclusory statements are insufficient to create a genuine issue of fact.

---

2. The parties dispute the width of this strip. Defendants claim that the strip is about one and one-half inches wide, whereas plaintiff claims that the strip is at least two and one-half inches wide. The width of the strip is only important in that it affects whether a high pressure zone is created. If the strip is two and one-half inches wide, then two portions of the cover laid end-to-end create a five inch solid portion in the cover, and it is more likely that a high pressure zone is created.

3. Plaintiff did not explain its theory regarding these imperforate strips until after this court rendered its initial ruling. Prior to filing its Request for Continuance, plaintiff did not expressly claim that the high pressure zones created by defendants' covers served any function in the movement of the cans. This belated explanation is notcompletely satisfactory. If the strips do have any significant slowing effect, then they would create jams, not prevent them.

*Chemical Engineering Corp.*, 795 F.2d at 1571; *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984). Accordingly, defendant is entitled to summary judgment regarding the '406 patent because plaintiff has failed to establish a genuine issue of fact as to literal infringement.

### 3. Patent '223

Patent '223 requires "side means having closed portions" and a cover with imperforate side edges that create high pressure zones "to serve as a barrier to limit movement of the objects against said side means and to exert a positive pressure inwardly ... to minimize contact of the object with the side means." Defendants' Appendix of Exhibits, Tab H.

Defendants' equipment has side guide rails which are designed to guide cans along the table. Defendants' equipment also has covers with imperforate edges. Nevertheless, defendants assert that the combination of the guide rails and the imperforate edges does not create a high pressure zone. Defendants' Appendix of Exhibits, Tab A, at ¶¶ 26, 27 ("The small solid strips along the edges are not designed to create high pressure areas; they are for strength and for a place to attach the cover.... There exists no high pressure barrier along the sides."), Tab B, at ¶ 7a, and Tab C, at ¶ 12.

Plaintiff counters that the imperforate edges shown in Addendums C and D to Plaintiff's Memo (i.e. the portions marked "A" and "B" in those drawings) combine with the side walls shown in Addendums A and B at point 20 to create a high pressure area.[4] Plaintiff's Appendix of Exhibits,

Tab 1, at ¶ 23 ("The container density under the side edges "A" was less than at the center ... because the containers were tending to move away form the side edges due to increased air pressure."); *see also* Tab 4, at ¶ 16, 17.

■ Thus, there is a genuine dispute of fact as to whether a high pressure zone is created along the side walls of defendant's equipment. It is undisputed that the edges of defendant's covers are imperforate and that defendants' equipment has some form of side guide rails, but there is conflicting evidence as to whether this equipment creates a high pressure zone. This fact is material because the patent requires high pressure zones of sufficient force to "exert a positive pressure inwardly from said side means to minimize contact of the object with said side means." Defendants' Appendix, Tab H, last page. Thus, this court cannot determine whether Patent '223 is literally infringed.

### B. *Doctrine of Equivalents*

Analysis of literal infringement is not sufficient to determine whether defendant's equipment actually infringes plaintiff's patent. "It is well settled that more than a literal response to the terms of the claims must be shown to make out a case of infringement." *Leesona Corp. v. U.S.*, 530 F.2d 896, 906 (Ct.Cl.1976) (citing several other cases, including *Westinghouse v. Boyden Power Brake Co.*, 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136 (1898)).

■ The doctrine of equivalents may be applied in favor of plaintiffs or defendants in infringement cases. The essence of the classic doctrine of equivalents is that one

---

**4.** Addendum A and B to Plaintiff's Memo show a solid side wall. It is not clear from Addendums A and B whether there is any air space between the side wall and the edge of the top cover. Defendants describe the equipment as follows: "[T]he side guide rail is located one and one half inches in from the side shield [presumably the walls shown in Addendum A and B] and air flowing down the can duct exhausts through this area as well as through the cover." Defendants' Appendix of Exhibits, at Tab A, ¶ 27. Further, Defendants' Exhibits B and E to Tab A consist of two photographs, both of which purport to show defendants' equipment from a side view. On these photos, the sides are open. Nevertheless, defendants apparently accept the Addendum A version of its equipment since it uses the same drawing in its Reply. *See* Defendants' Reply, at 17. One possible explanation of these seemingly contradictory exhibits is that the photos were taken with the side shields removed. If that is the case, then the question remains whether the side shields combine with the imperforate edges of the covers to form a high pressure zone.

cannot practice a fraud on a patent by making insubstantial changes which add nothing, but avoid literal infringement. *Graver Mfg. Co. v. Linde Co.,* 339 U.S. 605, 607–08, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097 (1949). The doctrine of equivalents may also be applied in reverse, so that "where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different manner, but nevertheless falls within the literal words of the patent," no infringement will be found. *Id.* at 608–09, 70 S.Ct. at 856–57; *see also SRI Intern. v. Matsushita Elec. Corp. of America,* 775 F.2d 1107 (Fed.Cir.1985) (applying *Graver*).

In *Leesona Corp. v. United States,* 530 F.2d 896 (Ct.Claims 1976), the court applied the doctrine of equivalents in favor of the alleged infringer. In *Leesona,* plaintiff's patent required a porous metal layer with uniform porosity. Defendant's alleged infringement fit the description of plaintiff's patented device, but it did not perform the same function. As the court stated, "[w]hile [defendant's alleged infringement] is porous and ... in a very loose sense, could be said to have a uniform and controlled porosity, it is clear that it is neither intended to perform the [same function as plaintiff's patented equipment], nor in fact does so." *Id.* at 906. The court held that such "incidental and entirely insignificant" infringement does not create liability for patent infringement. *Id.*

The present case is similar to *Leesona.* Defendant Jetstream's machines do not operate on the same principle as plaintiff's patented inventions. Whatever similarities exist are incidental and do not enhance the operation of defendants' machines. Plaintiff's evidence does not suggest that defendants' equipment varies solid and perforate portions of covers in a strategic manner. Rather, plaintiff argues that the solid portions that naturally occur whenever panels are attached to each other create pressure zones that fall within the precise language of its patents. As to the side portions of defendants' equipment, defendants assert that they are not designed to create high pressure zones, and any pressure is incidental. Plaintiff has not produced any evidence that defendants' equipment intentionally creates pressure along the side walls; plaintiff's evidence only shows that there is a genuine issue of fact as to whether the side walls are solid enough to create pressure zones. This appears to be a case where defendants are not gaining the benefit of plaintiff's patents, but their equipment could fall within the literal language of the patents. *See* Defendants' Reply, at 19–21. In this case, plaintiff has failed to go beyond the literal language of its patents to show that defendant's equipment performs the same function in a substantially similar way.

Thus, based on the reverse doctrine of equivalents, defendants are entitled to summary judgment as to all three patents.

Plaintiff objects to the foregoing analysis on the grounds that it is legally improper to consider the reverse doctrine of equivalents where there is a genuine issue of material fact as to literal infringement. The essence of plaintiffs' argument is that the reverse doctrine of equivalents is not properly raised unless a claim for literal infringement is made out.

However, both literal infringement and non-application of the reverse doctrine of equivalents are required to support a finding of infringement. *See Leesona Corp. v. United States,* 530 F.2d 896 (1976) (citing several other cases, including *Westinghouse v. Boyden Power Brake Co.,* 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136 (1898)). The court need not apply the reverse doctrine of equivalents where defendants can prove that there was no literal infringement. However, it is not legally improper for the court to consider the reverse doctrine of equivalents prior to resolving the literal infringement issue. Especially in ruling on a motion for summary judgment, it is entirely proper for the court to conclude that while one element of a cause of action is factually disputed, sum-

mary judgment is appropriate because the result would be the same regardless of whether that element is proven.[5]

In fact, several courts have used the reverse doctrine of equivalents as an alternative ground for their decision, even after they ruled that there was no literal infringement. *See, e.g., Brenner v. Recognition Equipment, Inc.*, 593 F.Supp. 1275, 1278 (S.D.N.Y.1984); *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 662 F.Supp. 622 (E.D.Texas 1987).

Plaintiff cites several cases which state that if the patent is literally infringed, the doctrine of equivalents is not considered. *See* Plaintiff's Memo in Support of Motion, at 9:15–26. These cases are inapplicable to the present case because they involve the doctrine of equivalents, not the reverse doctrine. The doctrine of equivalents allows patentees to show that even where the patent does not fall within the literal claims of the patent, it is the "equivalent" of the patent. It is thus axiomatic that if the court finds that there is literal infringement, it need not discuss the doctrine of equivalents.

Nevertheless, these cases can be analogized to the present case. If plaintiff brought a motion for summary judgment, it would undoubtedly claim that its patents had been literally infringed, or, in the alternative, that the patents had been infringed under the doctrine of equivalents. If the court decided that factual issues existed as to literal infringement, it could nevertheless resolve the case on summary judgment if the challenged inventions were infringing under the doctrine of equivalents.

Thus, this court's analysis is not improper. Since there are alternative grounds upon which to rule in favor of defendants, the court concludes that defendants should prevail regardless of the outcome of the literal infringement issue.

**5.** Plaintiff asserts that defendants must "concede" literal infringement in order to argue the reverse doctrine of infringement, relying on *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107 (9th Cir.1985). In *SRI Intern.*, the court noted that defendants could have saved "time and cost for all" by conceding literal infringement, but the court did not *require* such a concession. *Id.* at 1118.

## III. Validity of the '223 Patent

Defendants challenge the validity of the '223 patent on the ground that it is not enabling. 35 U.S.C. § 112 requires that the patent claim describe the invention in such "full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use" the invention. The enablement requirement does not require that the patent disclose the specific embodiment of the claim; a broad claim can be enabled by the disclosure of a single embodiment. *See Cross v. Iizuka*, 753 F.2d 1040, 1051 (1985).

Defendants assert that Patent '223 is not enabling because plaintiff fails to disclose preferred dimensions of the cover and the side edges and does not include any "depiction or description" of the claimed side edges in plaintiff's patent. However, a patent can be enabling even if some experimentation is necessary to make the patented invention work. *Atlas Powder Co. v. E.I. Du Pont De Nemours*, 750 F.2d 1569, 1576 (Fed.Cir.1984). In *Atlas Powder*, the court affirmed that a patent was enabling despite its failure to specify the exact combination of ingredients that would produce the patented operable substance. The court reasoned that one skilled in the art could determine the proper combination of ingredients, and the claim need not specifically exclude all combinations that would be inoperable. *Id.* at 1576. The court noted that if the patent required "undue" experimentation, it could be non-enabling.

The burden of proving non-enablement is on the party challenging validity. *Id.* at 1577. Defendants have not shown with clear and convincing evidence that one skilled in the art could not figure out the proper dimensions of the patented invention. Defendant's evidence consists of declarations by its experts that they could not construct an operable air table based on the patents. Defendant's Appendix, Tab

A, at ¶¶ 34, 38, and 40, and Tab B, at ¶ 11, 14. By contrast, plaintiff's president states that "the disclosure is of a sufficient nature that one skilled in the art could practice the invention ... without undue experimentation." Plaintiff's Appendix, at Tab 1, at ¶¶ 31–39; *see also* Lenhart deposition, Tab 10, at 306.

 Some experimentation may be required to construct an air table that works in the manner described in the patent. However, the question remains whether *undue* experimentation would be necessary to construct an operable air table. Thus, there is a genuine issue of material fact as to whether the '223 Patent satisfies the enablement requirement.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED. Defendants' equipment does not infringe plaintiff's patents. Even if defendants' equipment falls within the literal language of plaintiff's patents, it performs its functions in a substantially different manner than plaintiff's patents. *Graver Mfg. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 854, 856. Whereas plaintiff's patents depend on variable air pressure to guide objects down the air table, defendants' machines rely on mechanical guidance. Defendants' machines may create variable air pressure zones, but these zones do not assist in guiding the objects.

IT IS FURTHER ORDERED that plaintiff's Request for Modification of the Court's Ruling is DENIED.