## ROYAL TYPEWRITER CO., Inc. v. L. C. SMITH & CORONA TYPEWRITERS, Inc.

### Civ. No. 2032.

District Court, D. Connecticut.

Oct. 3, 1947.

George E. Faithfull, and Davis, Hoxie & Faithfull, all of New York City, and Curtiss K. Thompson, and Thompson, Weir & MacDonald, all of New Haven, Conn., for plaintiff.

Theodore E. Simonton, of Cazenovia, N. Y., for defendant.

SMITH, District Judge.

Plaintiff, owner of the Woodfine patent no. 1,916,905 for an improvement in means of setting margins on typewriters, brings this action against defendant for infringement, by a margin control device of defendant, of Claim 3 of the Woodfine patent, which reads as follows: "In a margin regulator for typewriters the combination with a stop post, a carriage movable with respect to the stop post, a rack bar mounted on the carriage, a pair of stops slidable on the rack bar, and rack engaging catch members attached to each stop to normally secure the stops in set position on the rack bars, of spring mechanism tending to slide the stops toward one another, a pair of trip members operable to adjust the catch members to stop releasing positions, and extension keys attached to the shift members for actuating the latter from forwardly disposed positions."

Both the defendant's device and that of Woodfine provide for setting of margin stops by controls on the front of the machine easily accessible to the operator. Both are designed for use on the so-called open-face machine, the type of machine in general use, which carries the margin stops and the bar on which they are mounted to the rear of the machine.

Margin stops, on a bar or rack mounted on the carriage, halt the movement of the carriage by contact with a fixed post mounted on the frame, or, if the rack and stops are mounted on the frame, by contact with a fixed post mounted on the carriage.

The width of each margin is controlled by sliding the corresponding stop along the rack to the desired position and allowing a tooth on the stop, held against the rack by a spring, to engage an indentation between the teeth on the rack. At one stage in the development of margin control, this was done by hand, an awkward operation where the stop mechanism was to the rear of the machine. Later several methods were devised of making the setting by remote control, moving the carriage to bring the stop in position opposite a member which would hold it fixed while allowing the rack to move, by some remote control arrangement operable from the front of the machine disengaging the stop from the rack and engaging it to the holding member, moving the carriage again by hand until the desired position on the rack was opposite the stop, and then disengaging the stop from the holding member and allowing it to engage the rack at the desired position.

None of these methods appears to have been widely used. Woodfine improved these methods by providing a spring and a remote control stop release so that the operator could release the stop without reaching behind the machine, and when the stop was disengaged from the rack the spring would draw the stop against the fixed post. The desired setting could be obtained by moving the carriage to a position corresponding to the desired margin setting, releasing the stop from the rack and allowing the spring to move the stop against the post and there re-engage with the rack.

There is no question raised as to the validity of the Woodfine patent.

Nothing in the prior art approaches or suggests Woodfine's spring action.

Springs were used in prior patents to bring the stops back to their last previous setting when they had been temporarily released to allow writing in the previously used margin. However, the range of movement was small, the purpose was restricted, and the operation does not resemble Woodfine's spring action to bring the stops to the fixed post.

His "motorization" of the stops by means of the spring was a decided improvement in stop-setting mechanisms and most of the manfacturers of typewriters other than the Underwood type have adopted and widely advertized some such "automatic" margin-setting device. The Underwood differs from the so-called open-face machine in that the Underwood carries its bar, rack and margin stops at the front of the machine, which lends itself to easy manual setting of the forward-positioned margin stops and rack.

192

Defendant denies infringement, however, on the ground that Woodfine's claims are so narrow as not to include the alleged infringing device, particularly in view of the necessity for narrow construction of claims in a patent not a pioneer in a crowded art.

Admittedly the claims do not read literally upon the alleged infringing device, for, although the spring action is the same, Woodfine shows plural trip members to disconnect the stops from the rack and allow the spring to act upon them, while defendant uses a single trip member, which, when operated in one direction, releases one stop, when operated in the other direction releases the other stop.

There is also a question whether the language of the claims on the operating levers and keys for the device can be read to cover the construction of defendant.

Claim 3 may be broken down into the following elements:

In a margin regulator for typewriters the combination with

1. a stop post,

2. a carriage movable with respect to the stop post,

3. a rack bar mounted on the carriage,

4. a pair of stops slidable on the rack bar, and

5. rack engaging catch members attached to each stop to normally secure the stops in set position on the rack bars, of

6. spring mechanism tending to slide the stops toward one another,

7. a pair of trip members operable to adjust the catch members to stop releasing positions, and

8. extension keys attached to the shift members for actuating the latter from forwardly disposed positions.

Of these, all but 7 and 8 are clearly found in defendant's construction. For the pair of trip members of element 7 defendant has substituted a single trip member with two tripping surfaces. For the extension keys attached to the "shift" members for actuating the latter from forwardly disposed positions, defendant has substituted a single lever extending forwardly and upwardly at an angle of 45°

from the horizontal, to the right of the paper table.

There is a presumption that defendant's device does not infringe, since a patent was allowed it in spite of Woodfine's prior patent. That presumption, however, is outweighed by the proof here. It would appear that the Patent Office gave too narrow a construction to Woodfine's claims. True, Woodfine's was not a pioneer patent in the sense that it was the first margin-setting device, but it did make a substantial advance in ease and accuracy of setting by Woodfine's animation of the stops. Under the circumstances, at least a moderate range of equivalents should be allowed Woodfine in spite of the fact that plaintiff picked it up at a bargain to protect its own development, which, although it shows some improvements over Woodfine, might have infringed.

Any range of equivalents whatever must bring a finding of identity of the defendant's single trip bar with two tripping surfaces, and Woodfine's two trip bars, each with one tripping surface. More troublesome is the question of defendant's actuating lever and Woodfine's keys. The claim in suit may express an intent that the keys be carried some distance forward. Defendant obtains as good a result with a lever only very slightly forward of the trip members actuated thereby.

Each tripping surface of the trip member selectively is brought in contact with the stop device to be tripped, manually by the operator from the front of the machine without disturbing the paper table or looking or reaching behind it, in defendant's case by moving the lever up or down with the fingers, in Woodfine's case by pushing down the key attached to whichever trip member it is desired to operate. Surely the two substitutions, one bail with two tripping surfaces for two bails each with one, and the lever to move the two surfaces of the one bail selectively, for two levers each ending in a key to move either bail's one surface selectively, perform substantially the same function and in substantially the same way.

The exact distance forward is not specified. Anywhere forward of the trip mem-

bers within sight and convenient reach of the operator meets the purpose of Woodfine.

Unless there is in the circumstances of this case some bar to the application of the doctrine of equivalents, plaintiff must prevail.

Defendant urges three bars to the application of the doctrine of equivalents; first, the presumption of non-infringement because defendant is operating under its own patents; second, that plaintiff's conduct has been inequitable and it is, therefore, not entitled to have the equitable doctrine of equivalents involved in its behalf; and third, that a mere paper patent is not entitled to the doctrine.

■ On the first point, defendant's contention would make the implied finding by the Patent Office, that one device is not a mechanical equivalent of another, binding upon the courts, even though the point has not there been at issue in a proceeding between the parties. It can hardly be given such an effect, but may rather be treated as a warning flag that informed official opinion exists supporting defendant's contention of non-equivalence.

■ On the second point, it appears that, after defendant had gone ahead in its development in a belief that it did not infringe, plaintiff raised the question of infringement but apparently acquiesced in defendant's contention of non-infringement on advice of plaintiff's then patent counsel. On defendant's motion for judgment on the pleadings, delay of some years in bringing suit has been ruled no defense to the action to stop infringement from the time of suit, and claims for relief for the period prior to suit have been abandoned. No more reason appears to consider plaintiff's conduct a bar to the application of the doctrine of equivalents then to hold it laches or estoppel barring any recovery for continued infringement. It may be considered another warning of the closeness of the issue of equivalence and may be considered in determining the form of relief best fitted to the case.

■ On the third ground, defendant must also fail in.its effort to bar the application of the doctrine of equivalents. Mere "paper" patents must undoubtedly be held to a narrow range of equivalents. They are not foreclosed from even the most obvious. Moreover, while plaintiff's construction utilizes keys for the trip members which do not extend forwardly of the trip members, and so may not infringe, yet since they are actuated by the operator from in front of the machine without going behind the paper table, there was a question of infringement, which led to the purchase of the patent in the course of plaintiff's development. The claim in suit contains the essential advance in the art, "motorization" of the stops with the remote control of tripping, followed by all three major manufacturers of open-face typewriters. It should not be considered purely a "paper" patent in spite of the relatively nominal purchase price and plaintiff's development of a device differing in one element and possibly patentably distinguishable from it in that respect.