**DECADE INDUSTRIES, d/b/a
Sanus Systems, Plaintiff,**

v.

**WOOD TECHNOLOGY,
INC., Defendant.**

No. CIV. 99–1652 (DSD/SRN).

United States District Court,
D. Minnesota.

June 21, 2000.

David R. Fairbairn, Michael J. Pape, Kinney & Lange, Minneapolis, MN, for plaintiff.

Donald S. Arbour, Arbour Law Office, Malcolm E. Whittaker, Mineo & Whittaker, Charlotte, NC, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants plaintiff's motion.

## BACKGROUND

Plaintiff Sanus Systems ("Sanus"), the business name for Decade Industries, Inc., is a Minnesota company that makes stands and supports for audio and video equip-

ment. Defendant Wood Technology, Inc. ("Wood") is a North Carolina furniture manufacturer. In January 1998, Sanus introduced its new miniature stereo system stand, called the "Mini Stereo System Stand," at the annual Consumer Electronics Show in Las Vegas. Retailers responded enthusiastically, and the Mini Stereo System Stand was soon available at both retail electronic stores and general department stores and is currently offered in over five hundred retail locations.

On April 23, 1998, Sanus filed a design application with the U.S. Patent and Trademark Office for the design embodied by the Mini Stereo System Stand. After reviewing the application in light of the prior art, the patent examiner issued a notice of allowance. On February 23, 1999, Sanus's application issued as U.S. Patent No. Des. 405,988 (" 'D988 patent").

In January 1999, at the next Consumer Electronics Show, James Wohlford, inventor of the 'D988 patent and president of Sanus, noticed that Wood was displaying a stand for a miniature stereo system. To Wohlford's eye, the design of the Wood stand seemed to be a near duplication of the patented design. On January 21, 1999, Sanus wrote a cease and desist letter informing Wood about the pending design patent for its Mini Stereo System Stand. Several months later, after Sanus had provided Wood with a copy of the 'D988 patent, Sanus discovered a summer 1999 Crutchfield catalog advertising a Wood miniature stereo stand. Although the stand was slightly modified from Wood's earlier design, Sanus continued to believe that the Wood product was an infringing knock-off of their patented design.

In November 1999, Sanus brought this suit for patent infringement. After Wood's motion to dismiss for lack of personal jurisdiction was denied, Sanus brought the present motion for preliminary injunction. Since bringing the motion, Sanus has learned that Wood is now supplying the allegedly infringing stand to Sears department stores.

## DISCUSSION

■ Sanus now brings a motion for a preliminary injunction, asking the court to enter an order halting Wood's alleged infringement of the 'D988 patent. In evaluating a motion for preliminary injunction, the court considers the four factors set forth by the Eighth Circuit in *Dataphase Systems, Inc. v. CL Systems, Inc.*: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest. 640 F.2d 109, 112–114 (8th Cir.1981). The court weighs the four factors to determine whether injunctive relief is warranted. *See id.* at 113; *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). The movant bears the burden of proof concerning each of them. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987).

## A. Likelihood of Success on the Merits

To prevail on its infringement claim, Sanus must establish (1) that it owns a valid design patent and (2) that Wood's accused product infringes the 'D988 patent. The court will discuss each issue separately.

### 1. Validity of the 'D988 Patent

■ An inventor may obtain a design patent for an article of manufacture that is new, original, and ornamental, so long as the design is not dictated by functional requirements. *See* 35 U.S.C. § 171; *Avia Group Int'l Inc. v. L.A. Gear Calif.*, 853 F.2d 1557, 1563 (Fed.Cir.1988). Upon issuance by the U.S. Patent and Trademark Office, a design patent is presumed valid. *See* 35 U.S.C. § 282. The party asserting invalidity bears the burden of overcoming this presumption by clear and convincing

evidence. *See Avia Group,* 853 F.2d at 1562. As the Federal Circuit has stated:

> [O]bviousness … is reviewed from the viewpoint of a designer of ordinary skill or capability in the field to which the design pertains. As with utility patents, obviousness is not determined as if the designer had hindsight knowledge of the patented design.
>
> When the patented design is a combination of selected elements in the prior art, a holding of obviousness requires that there be some teaching or suggestion whereby it would have been obvious to a designer of ordinary skill to make the particular selection and combination made by the patentee. The first step in the analysis, when the subject is design, is whether there is "a reference to something in existence, the design characteristics of which are basically the same as the claimed design, in order to support a holding of obviousness." Thus not only the individual elements, but the ornamental quality of the combination must be suggested in the prior art.

*L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1124 (Fed.Cir.1993) (citations omitted). Here, Sanus identifies a number of ornamental features of the 'D988 patent that it contends are novel and non-obvious individually and in combination with each other: (1) an overall size that is proportioned to fit a miniature stereo system; (2) an open support system constructed by four independent cylindrical legs, quadrilaterally positioned, which extend from a base that rests on the ground to a top shelf; (3) shelving that extends outward separately from left and right side legs; (4) positioning of the left and right side shelves so that they extend outward at a height lower than the top shelf. Wood responds by directing the court to several previously patented designs that, it argues, fully anticipate the Sanus design and therefore render the 'D988 patent obvious and invalid.

If anything, however, the prior art supports Sanus's argument that the 'D988 patent represents a novel and non-obvious design. While a few of the individual ornamental elements appearing in the 'D988 patent arguably can be glimpsed in the prior art, the combination of these elements in the 'D988 patent is entirely original. The prior art may be separated into two general categories: In the first category, the designs employ a cabinet or bookshelf-like look with simple angles and a solid sidewall support system. *See, e.g.,* U.S. Patents 2,522,748; Des. 39,491; Des. 342,172; Des. 133,436. In the second category, the designs make elaborate use of curvilinear or diagonal lines and rely on open support systems. *See, e.g.,* U.S. Patents Des. 141,319; Des. 277,439; Des. 318,-280; Des. 326,377. The 'D988 patent represents a significant departure from both of these models, combining the simple angles and lines of the cabinet-like designs with the open support system of the elaborate designs.[1] When viewed in its entirety, the 'D988 patent bears almost no resemblance to any of the prior art identified by Wood. Given this unique design, and given the presumption of validity that attaches to the issuance of the patent, the court concludes that Sanus is likely to succeed in demonstrating the validity of the 'D988 patent.[2]

## 2. Infringement

■ The court now turns to the question of whether Sanus is likely to prove

---

1. While U.S. Patent 4,099,472 makes use of both simple angles and an open support system, it teaches a stacking shelf system that combines none of the novel, ornamental features of the 'D988 patent.

2. Reference to the prior art also fatally undermines Wood's contention that the design features of the 'D988 patent are primarily functional. "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear,* 988 F.2d at 1123–24. Here, the prior art shows a myriad of possible designs that can achieve the functions of a stereo stand, strongly suggesting that the claimed design is primarily ornamental.

that Wood's product infringes the 'D988 patent. To prove infringement, Sanus must establish that Wood's design is substantially the same as the claimed design. "The criterion is deception of the ordinary observer, such that one design would be confused with the other." *L.A. Gear,* 988 F.2d at 1124. As the Supreme Court held in *Gorham v. White:*

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

14 Wall. 511, 81 U.S. 511, 528, 20 L.Ed. 731 (1871). In addition, the accused design must appropriate the novelty that distinguished the patented design from the prior art. *See Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed. Cir.1984).

Comparing the design shown in the 'D988 patent and Wood's accused product, the court concludes that a jury would be highly likely to find a substantial similarity between the two products. On first observation, the resemblance between the two designs is striking. Indeed, at the preliminary injunction hearing, where one of the Wood stands was put on display, the court was initially uncertain as to whether it was viewing an embodiment of the claimed patent or an example of the accused product. This confusion is understandable given that the Wood stereo stand employs each of the features described in Part A.1 above: Its overall dimensions are proportioned to fit a miniature stereo system. It uses an open support system constructed by four independent cylindrical legs, positioned quadrilaterally, which extend from a base that rests on the ground to a top shelf. Two side shelves extend outward separately from the left and right side leg and are positioned so that they extend outward at a height lower than the top shelf.

There is little question, then, that the accused product has coopted the ornamental novelty of the 'D988 patent. While Wood has tweaked some of the angles and proportions of the Sanus design and has inserted additional shelves between the upright legs, these minor changes do not materially alter the substantial visual likeness of the two designs when they are viewed in their entirety. Indeed, given the real world circumstances in which the Wood stereo stand would be viewed, these minor changes would likely go unnoticed by the ordinary observer.

Perhaps because there is little legitimate dispute as to the visual similarity of the claimed patent and the accused product, Wood asks the court to focus on the fact that a patent examiner recently issued a notice of allowance to Wood's patent application on the design embodied by the accused product. Wood contends that the notice of allowance is "a warning flag that informed official opinion exists supporting defendant's contention of non-equivalence," *Royal Typewriter Co. v. L.C. Smith & Corona Typewriters,* 76 F.Supp. 190 (D.Conn.1947), and that the patent examiner's decision should control absent clear and convincing evidence that he made a mistake.

 There are several reasons why the court must reject Wood's argument on this point. First, the Federal Circuit has made it clear that "the fact of separate patentability presents no legal or evidentiary presumption of noninfringement." *Hoechst Celanese Corp. v. BP Chem. Ltd.,* 78 F.3d 1575, 1582 (Fed.Cir.1996). *See also Atlas Powder Co. v. E.I. du Pont De Nemours & Co.,* 750 F.2d 1569, 1580, (Fed. Cir.1984); *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1192 (Fed. Cir.1996). Second, it is axiomatic that the court determines infringement by comparing the allegedly infringing product, not the alleged infringer's patent, to the claimed design. *See, e.g., Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 1571 (Fed.Cir.1986). Both considerations

are especially relevant here, where the patent examiner has apparently proceeded on the belief that the proposed Wood design includes glass shelves, a feature that is absent from the accused product. *See* Examiner's Amendment (Feb. 23, 2000) (Pope Decl. Ex. A.) ("Figure 1 is objected to because the line that are used to represent what appears to be glass shelves are too heavy and are bleeding together."). Finally, even if the court were to ascribe some evidentiary value to the notice of allowance, the powerful direct evidence of substantial similarity would easily overcome it.

For these reasons, the court concludes that Sanus is highly likely to prevail on the merits of its infringement claim against Wood.

## B. Remaining Dataphase Factors

■ In matters involving patent rights, a strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee. *See, e.g.,* *H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987). As the Federal Circuit reasoned in *Smith Int'l Inc. v. Hughes Tool Co.*:

> The very nature of the patent right is the right to exclude others. Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding. A court should not be reluctant to use its equity powers once a party has so clearly established his patent rights. We hold that where validity and continuing infringement have been clearly established, as in this case, immediate irreparable harm is presumed. To hold otherwise would be contrary to the public policy underlying the patent laws.

718 F.2d 1573, 1580–81 (Fed.Cir.1983). Here, Sanus has clearly established both the validity of its design patent and the continuing infringement of that patent by Wood. Thus, Sanus is entitled to a presumption that it will suffer irreparable harm absent an injunction.

In addition, Sanus has submitted credible affidavit evidence describing the concrete irreparable harm that will result form Wood's continued infringement of the patented design: (1) frustration of Sanus's general business plan, in which the success of the Mini Stereo System Stand provides an opportunity for Sanus to leverage its entire product line into retail stores and (2) frustration of Sanus's business investment cycle, wherein profits from successful current products like the Mini Stereo System Stand are reinvested in the research and development of improved and new products. After reviewing the record, the court agrees that the continued infringement of the accused product runs a serious risk of undermining a unique chance for Sanus to gain a foothold in the retail market for its other products and to gain profits for further product development. The court also concludes that an injunction in this case would serve the public interest by protecting and promoting innovation and by preventing confusion among consumers. *See Smith,* 718 F.2d at 1581 ("[P]ublic policy favors protection of the rights secured by the valid patents.").

On the other side of the scale, a preliminary injunction will only minimally harm Wood, and will not in the least prevent Wood from marketing non-infringing products. Wood was fully aware of the 'D988 patent when it designed its current stereo stand and took a calculated risk that it might infringe that patent when it declined to make substantial alterations. If Wood has failed to plan for the contingency of an injunction, it has only itself to blame for any resulting injury. Moreover, Wood has already demonstrated that it is capable of quickly reworking the design of a product and placing the new product on the market. If Wood is able to employ a higher degree of creativity in its next redesign, it will have a full opportunity to compete

**984**

with Sanus in the miniature stereo stand market.

In sum, each *Dataphase* factor strongly counsels in favor of the issuance of a preliminary injunction. Accordingly, the court will grant Sanus's motion.

### C. Bond Amount

Under Federal Rule 65(c), the court is required to determine the amount of security that the preliminary injunction movant must give "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Given the strong likelihood that Sanus will succeed on the merits of its infringement claim and the minimal chance that Wood will suffer significant cognizable harm from the issuance of an injunction, the court concludes that a bond of $10,000 is appropriate in this case.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for a preliminary injunction is granted.

2. Defendant is preliminarily enjoined from making, using, selling, or offering for sale any product which infringes U.S. Patent No. Des. 405,988. The miniature stereo stand advertised in the Summer 1999 Crutchfield catalog is such an infringing product.

3. This injunction will not take effect until plaintiff posts a bond or provides other security in the amount of $10,000.